## THE CITY OF NORWICH *vs.* HUBBARD AND ANOTHER.

A mortgagee of real estate, out of possession, can not be considered, or treated, as the proprietor of such mortgaged estate.

The charter of the city of Norwich provides, that the common council of said city may order the proprietor, or proprietors, of the land and buildings, fronting side-walks and gutters, at their own expense, to level, raise or form such side-walks and gutters on their several fronts, &c., and may limit such time as they may deem reasonable therefor. And in case of neglect, on the part of such proprietor or proprietors, may employ some meet person to do the same, and liquidate the expenses thereof, and order the same to be paid by such proprietor, and that all such expenses and interest thereon shall be a lien, or real incumbrance, upon the land and

---

The City of Norwich *v.* Hubbard and another.

---

buildings, in reference to which such expenses have been incurred; and that the payment thereof may be enforced, in like manner as if said land and buildings were mortgaged to said city. Certain premises fronting on a street in said city, being subject to a mortgage, the court of common council ordered, that said street should be curbed, graded, and flagged, and that notice thereof should be given to the proprietors of lands adjoining and fronting said side-walk. L, the mortgagor, was notified of such order, but no notice was given to the mortgagee. L having failed to comply with the order, said street was curbed, graded and flagged, in front of said mortgaged premises, by a meet person, appointed for that purpose, and the expense thereof liquidated and ordered to be paid by L, which he neglected and refused to do.

On a bill in equity, brought by said city against both the mortgagor and mortgagee to enforce their lien upon said premises, it was held, that the mortgagee was liable to be foreclosed of his right to redeem said premises, unless he paid the amount expended as aforesaid.

THIS was a bill in equity, brought by the city of Norwich, to enforce a lien, claimed by the plaintiffs, to exist, as security for the payment of $104.25, which they had expended, in grading, curbing and flagging a sidewalk.

The third, fourth, fifth and sixth sections of the amended charter of the city of Norwich are as follows:

"Sec. 3. The court of common council, of said city, shall have power and authority, from time to time, as public convenience may require, to designate and fix the width, course, height and level of sidewalks and gutters, in and upon the streets and highways in said city.

"Sec. 4. Said court of common council may, from time to time, order the proprietor or proprietors of the lands and buildings fronting such sidewalks and gutters, at their own expense, to level, raise or form such sidewalks and gutters, on their several fronts, according to their width, course, height and level, designated as aforesaid, and also to flag, or to pave such sidewalks or gutters, in such manner as said court of common council shall direct. And said court of common council may limit such time as they shall deem reasonable, for leveling, raising or forming, and for flagging or paving such sidewalks or gutters, and in cases where the

lands or buildings, fronting such sidewalks or gutters, shall be holden for a term of years, or any other estate less than fee simple, said court of common council may, by their order, apportion, in such manner as they shall judge right, the expense of raising, leveling or forming and flagging or paving such sidewalks or gutters, among the different persons having an interest in the lands or buildings holden as aforesaid. And whenever the proprietor or proprietors of any such lands or buildings shall not reside within this state, notice, in writing, to the occupant or occupants, or person having the care of any such lands, or buildings, of any such order, shall be sufficient notice to all persons interested therein.

" Sec 5. If any proprietor or proprietors of any such lands or buildings shall neglect to level, raise or form, flag or pave, any such sidewalk or gutter, in such manner and within such time, as said court of common council shall direct and limit; said court of common council may appoint and employ some meet person, to raise, level or form, and to flag or pave such sidewalk or gutter, and may adjust and liquidate the expenses thereof, and order the same to be paid, by such proprietor or proprietors, neglecting as aforesaid. And said court of common council may appoint a collector, to whom the mayor, or one of the aldermen of said city, shall issue a warrant of distress, authorizing him to collect, of such proprietor or proprietors, respectively, the sums ordered to be paid by them respectively, as aforesaid.

" Sec. 6. All such expenses, and the interest thereon, shall be a lien, or real incumbrance, upon the land and buildings, in reference to which such expenses have been incurred; and, in case the same shall not be obtained, by the collector appointed to collect the same, the payment thereof may be enforced in like manner, as if said land and buildings were mortgaged to said city, to secure the payment thereof."

The plaintiffs, in their bill, alleged, substantially, that, on the 4th day of August, 1851, the court of common council of said city, designated and fixed the width, course, height

and level of the sidewalk, and the curbing and grading thereof, on the west side of Thames street, in said city, between the north-easterly corner of D. N. Bentley's store and Page's corner, so called; that said court of common council, on the same day and year, ordered the proprietors of lands, adjoining and fronting said sidewalk, to curb, grade and flag the same, as ordered, laid out, and designated as aforesaid, six feet within said curbstone, where the sidewalk would admit of it, and the whole width, where it was less than six feet, and to complete the same, to the satisfaction of the street commissioners, on or before the 10th day of October, 1851, and that notice thereof should be given to said proprietors; that Charles J. Lanman, of said city of Norwich, at the time said order of notice was made and given, was, and still continued to be, one of the proprietors of land and buildings fronting said sidewalk, and then was, and ever since has continued to be, the owner in fee of said land; that said Lanman was duly notified of said order, and that he neglected and refused to comply with the same; that said court of common council, on the fifth day of November, 1851, appointed and employed one Noyes, a meet person, of said city, to flag, curb and grade said sidewalk, in conformity with said order, in front of said land and buildings of said Lanman, which said Noyes afterward did, and presented his account of the expenses thereof to said court of common council; which, being adjusted and liquidated, amounted to the sum of $104.25, and was ordered to be paid by said Lanman, who neglected and refused to pay the same; that, on the 31st day of January, 1852, the mayor of said city issued his warrant of distress, directing the city collector to collect the same of said Lanman. On the 30th day of March, 1852, said collector made a return of said warrant, stating, that he had made demand of said Lanman, of the sums contained in said warrant, which he refused to pay, and that he had made search for goods and chattels of said Lanman, whereon to levy, and satisfy said

warrant, but could find none within his precincts, and there-
fore, that he returned said warrant, wholly unsatisfied, and
that said sum of money, specified in said warrant, remained
wholly due and unpaid.

Prior to said proceedings, by said court of common coun-
cil, and the order for making, grading and flagging said side-
walk, said Lanman mortgaged said lands and buildings to
Amos H. Hubbard, of said Norwich, to secure payment of
certain notes and debts, due to said Hubbard from said
Lanman, and to indemnify said Hubbard against certain
obligations by him assumed, for the benefit of said Lanman ;
which mortgages were then, ever since have been, and still
are, a lien on said lands and buildings; and that said Hubbard
had no notice of the proceedings aforesaid, concerning said
sidewalk.

Said bill prayed the court, on finding the facts therein
alleged to be true, to limit and appoint a time, within which
said Lanman and Hubbard should pay to the plaintiffs, said
sum of $104.25, and interest thereon, from the time when
the same was due, or be foreclosed from all right to redeem
said premises.

To this bill, the defendant, Hubbard, demurred generally.
The court sustained the demurrer, and decreed that, as
against said Hubbard, the bill should be dismissed. The
plaintiffs thereupon filed their motion in error, and brought
the record before this court for revision.

*G. Perkins* and *Hovey*, in support of the motion, contend-
ed, that the expenses incurred by the plaintiffs, in flagging
the sidewalk in question, and the interest thereon, constitu-
ted a lien, or real incumbrance upon the land and buildings
described in the bill. Amended Charter of the City of Nor-
wich, sections 3, 4, 5 and 6. To enforce such lien, the
plaintiffs were entitled to a decree of foreclosure against
both of the defendants. Amended Charter, sec. 6. No other
facts are necessary, by the provisions of the city charter, to

lay the foundations for a decree against said Hubbard, than are required to authorize a decree against the defendant Lanman.   In both cases, the decree must rest upon the ground that the plaintiffs, by virtue of the proceedings set forth in their bill, have a lien or real incumbrance upon the land sought to be foreclosed.   If such lien or incumbrance exists at all, it attaches to, and may be enforced upon, the land.   It is a sufficient answer to the claim, of the plaintiffs in error, that notice should have been given to Hubbard, that no such notice is required by the charter of the city, and that, if it had been given, it could not have been enforced ; for he was not the proprietor of the land, and had only a chattel interest.   *Barkhamsted* v. *Farmington*, 2 Conn. R., 600.   *Huntington* v. *Smith*, 4 Conn. R., 235.   *Leonard* v. *Bosworth*, 4 Conn. R., 421.   *Toby* v. *Reed*, 9 Conn. R., 216.

*E. Perkins*, contra, contended, 1. The fourth section of the charter of the city provides, that notice of the order to form and pave the sidewalks opposite landholders, for a term of years, or any other estate less than a fee simple, as well as in fee simple, shall be given to all the different persons in interest.   This is necessarily inferred, from the word " order," and from the provisions in the last clause of the section, as to notice to non-residents.

2. If the charter does not, in express words, require notice, still the action of the common council will not affect the rights of the parties interested in the lands, to whom no notice was given.   *New Jersey Turnpike Co.* v. *Hall*, 2 Harr. R., 437.   5 U. S. Dig., 458.   3 U. S. Dig., 62, sec. 2, 11. 15 Wend. R., 374.   15 John. R., 537.   *City of Hartford* v. *Chipman*, 21 Conn. R., 488.

3. At law, Hubbard, as mortgagee of Lanman, is the owner or proprietor of the land.   In equity, he has a substantial and material interest in the land, to be affected by the proceedings of the city council.   Whatever view may be taken of the nature of the estate of a mortgagee of real

estate, it certainly is embraced in the comprehensive expression, " any estate, less than a fee simple."

CHURCH, C. J. This is an application, by the city of Norwich, in the nature of a process of foreclosure, to enforce a lien claimed by said city, to secure the payment of $104.25, incurred as expenses under the third, fourth, fifth and sixth sections of the city charter, in grading, curbing and flagging a sidewalk, fronting the land and buildings of Charles J. Lanman, and of which he was supposed to be the owner and proprietor, and of which Amos H. Hubbard, one of the respondents, was mortgagee.

The petition, in which all the facts constituting the plaintiffs' claim are detailed, is demurred to by Hubbard, the mortgagee, because it appears, from the allegations, that he did not receive any notice of the proceedings of the court of common council, whereby it is claimed that said lien was created.

The sections of the charter referred to, in effect, provide that the common council of the city " may order the proprietor or proprietors of the land and buildings fronting such sidewalks and gutters, at their own expense, to level, raise or form such sidewalks and gutters on their several fronts, &c., and may limit such time as they may deem reasonable, for levelling, raising or forming, or for flagging or paving such sidewalks, &c., and, if any proprietor or proprietors shall neglect to level, raise or form, flag or pave any such sidewalk, &c., said court of common council may employ some meet person to do the same, and liquidate the expenses thereof, and order the same to be paid by such proprietor, &c. And all such expenses and interest thereon, shall be a lien or real incumbrance upon the land and buildings ; the payment thereof may be enforced in like manner as if said land and buildings were mortgaged to said city," &c.

The question raised by the demurrer of Hubbard is, whether he, as mortgagee of Lanman, by virtue of a mortgage,

anterior to all the proceedings detailed in the petition, was entitled to notice of them, or can be foreclosed of his rights, unless he pays the sum demanded, inasmuch as it is conceded, that no notice was ever given to him.

The sections of the charter, to which reference has been made, do not, in terms, direct that notice of the preliminary proceedings should be given to anybody, but an order of the court of common council directed notice to Lanman, the mortgagor, as the proprietor of the land and buildings, in front of which the improvements were made.

A mortgagee, out of possession, is not the proprietor of the mortgaged premises, and, in common parlance, is never spoken of as such, nor is he so recognized, in a legal sense. To be sure, he is said to have the legal title, and as against the mortgagor, and for the purpose of enforcing his rights, as mortgagee, he has such title. He can convey no beneficial interest in the land mortgaged, as separate and distinct from the debt; and he has no such interest in it as can be levied upon, and taken in execution, by his creditors. Although, in this state, we have holden, that, in a strictly legal sense, the mortgagee has a bare title, even after payment of the debt, if the law day had expired before, until a release deed is executed; yet this is rather a matter of policy, arising from our recording system, than from any other view of it. In truth, the mortgagee has only a lien, and can not be considered or treated as a proprietor or owner of the mortgaged estate.

This view is corroborated by analogous cases. In laying out new highways, either by selectmen or by the county courts, or in repairing old ones, no provision is made by law, for notice to be given to mortgagees, nor, in practice, is this ever done. The interests of mortgagees are not regarded in these proceedings; they are necessarily connected with the interests of the mortgagor, and, in this respect, subject to them. However reasonable we may believe it to be, that a mortgagee should, by a timely notice, have an opportunity

of protecting his rights, which the mortgagor has neglected, yet, as neither the charter of the city nor any other law has provided for this, we can not require it, without the exercise of powers which we do not possess. It is sufficient, in order to create and enforce this lien, that the city has done every-thing required of it, by the charter and the law.

The result is, that the judgment of the superior court is erroneous and must be reversed.

In this opinion, the other judges concurred, except WAITE, J., who tried the cause in the court below, and was disquali-fied.

Judgment reversed.