McInerny v. Reed.

that twenty-eight out of thirty-two of its inhabitants had petitioned for a change of location.

At the hearing, the defendant moved the court to dissolve the injunction and dismiss the bill, from the sustaining of which, the plaintiffs appeal.

*Cloud & Broomhall* for the appellants.

*W. F. Brannon* for the appellee.

School: change of site: district board: remedy.

Affirmed.

## McInerny v. Reed.

1. **Corporation municipal: TAXES: POWER TO COLLECT BY SALE.** The power to levy and collect a special tax, given in a city charter, does not carry with it the power to collect such tax *by a sale* of the property upon which it is assessed.

2. —— **BY ENFORCEMENT OF LIEN.** The collection of such tax, which is declared to be a lien upon the real estate on which it is assessed, may be reached by the enforcement of such lien in a court of equity.

3. —— **TAXES ARE NOT ASSIGNABLE.** But a special tax of this character, not partaking of the nature of an ordinary debt, is not assign-

McInerny v. Reed.

able, and a person claiming as assignee thereof from the city cannot enforce its collection.

*Argu.* 1. SOURCE AND NATURE OF POWER. The power to levy and collect exists by virtue of the sovereign authority in the State, and is conferred by it upon the city, to be by *it* exercised, not delegated to others.

4. —— EQUITABLE ASSIGNMENT. Equity will not *imply* an assignment of a claim where it is legally incompetent for the parties to make an express contract of a similar character ; hence an assignment of a tax from a city to a purchaser at a tax sale, void for want of power in the corporation to make it, will not be implied from the fact of sale.

5. —— VOID SALE NO BAR TO COLLECTION. The corporation in such case, notwithstanding the void sale, might, by a suit in equity, collect the tax and enforce its lien.

*Appeal from Des Moines District Court.*

SATURDAY, DECEMBER 14.

MUNICIPAL CORPORATIONS : GRANT OF POWER TO COLLECT TAXES CONSTRUED : DEMURRER TO PETITION. — The petition, in substance, alleges, that defendant was and is the owner of lot 461 in Burlington. That the city of Burlington (acting under section 25 of its charter ; act of June 10, 1845), " all conditions precedent having been complied with" (Rev. § 2922), ordered the grading and macadamizing of Division street in front of lot 461 ; that said improvement cost the city \$184 $\frac{63}{100}$ ; which sum was levied as a special tax upon said lot ; that remaining unpaid the lot was, under an ordinance of the city, sold to pay said special tax, on the 19th day of June, A. D. 1860, to this plaintiff, who received a deed therefor from the city ; that, in consideration of said sale and deed, plaintiff paid the city the above mentioned sum of \$184 $\frac{63}{100}$ ; and the prayer is, that this sum, with interest, be declared a lien upon the lot, and that it be ordered to be sold to pay it.

It is further averred, that the city did this work at the special instance and request of the defendant, who promised to pay for the said improvement. Defendant

demurred, upon the ground, "that the said city has no legal right or power to assign, transfer, delegate or farm out its taxing power or its right to collect its taxes;" also, upon the ground, that, as the petition admitted that the sale of the lot to plaintiff was null and void, he could not, by reason of such sale, be the assignee of the city.

This demurrer being sustained, the plaintiff appeals.

*J. Tracy* for the appellant.

*C. H. Phelps* for the appellee.

DILLON, J. — The only provisions of the charter referred to, as empowering the city to make the improvements 1. CORPORATION MUNICIPAL: taxes: power to collect by sale. in question chargeable upon the property abutting upon the street thus improved, are sections 20 and 25 of the charter (act of June 10, 1845).

Section 20 has become misplaced, and should follow section 25 or be read in connection with it. By these sections the city is authorized " to cause to be opened, paved or improved any street, on petition of not less than two-thirds of the number of owners bounding on such street, and *to levy and collect a special tax for defraying the costs and expenses of the same by an equal assessment on the lots bounding and abutting as aforesaid* " (§ 25), " *and such tax shall be a lien upon the real estate upon which it may be assessed* from the time of the filing of such petition until it shall be fully paid or satisfied (§ 20).

Under this grant of power, the city passed an ordinance (No. 32, p. 122 of printed ordinances) providing the mode in which the special tax for street improvement authorized by section 25 of the charter, should be assessed, levied and collected.

McInerny v. Reed.

Concerning the mode of collection, this ordinance in substance provides, that "a certified copy of a list of assessments shall be delivered to the city collector, who shall make demand of payment of the owners, their agents or guardians, if to be found, if not, then on the premises so assessed; and in case of a failure to collect on demand, the council may direct the collector to sell the same," and the mode of sale and the notice required are pointed out. If the sale is approved by the council, the ordinance provides, that "the mayor shall execute and deliver a deed to such purchaser in fee simple, under his hand and official seal."

One year from the date of sale is given to the owner to redeem, by paying the amount for which the property sold, with costs and twenty-five per cent additional. It is admitted by the petition and by the plaintiff's counsel, in argument, that this ordinance is in excess of the charter-power so far as it authorizes a sale and conveyance of the property by the city. See on this subject *Ham* v. *Miller*, 20 Iowa, 450 (in point); Blackwell on Tax T. ch. 31, p. 448 (ed. 1864). It is therefore conceded that the city had no power to *collect* the special tax or assessment by a sale of the property.

But the charter does confer upon the city the power "to levy and *collect*" the special tax, and such tax is declared by the charter to be "*a lien* upon the real estate upon which it may be assessed." No mode of collection is specified in the charter. It is, as shown above, not competent for the city, under these circumstances, to collect by a sale of the property. It could not confer upon its own officers jurisdiction to entertain suits for a recovery of a tax as large as that in question. It has the grant of the power to collect. How is it to enjoy that power?

Is the power conferred nugatory, or rendered ineffective

because the mode or manner of its exercise is not pre-scribed? We take a view of the matter which upholds the power granted and makes it effective, but which duly guards and preserves the rights of the property owner. The expenditure is declared to be a lien, and liens may be enforced in equity, and the power "to collect" given by the charter, may be exercised by commencing an action in court to have the lien enforced. That the *city*, in the cases and under the conditions specified in the charter, could thus exercise its power to collect, we make no doubt. Substantially this mode is the one provided by the present general municipal corporation act (Rev. § 1068).

We refer to this simply to show that such a course has been sanctioned by the general assembly, and not to affirm that this act has any direct application to the case at bar. The grant of the power "to collect" carries with it "all the usual, ordinary and necessary means for the exercise of the power." Blackwell, ch. 22, § 18; Id. ch. 31, p. 448 (ed. 1864). And see *The Mayor, etc.*, v. *Colgate*, 2 Kernan (N. Y.) 140.

We have said that the *city* may collect, by suit, the special tax assessed upon the lot benefited. Can the *plaintiff*, 3. —— taxes as the alleged assignee of the city, enforce the are not assign-able. collection of the amount by a similar suit, brought in his own name? This is the difficult and some-what close question in the case. If the "special tax" or "assessment" were an ordinary debt, and if the ordinary principles of law, applicable to dealings between private individuals, were applied to the transaction set forth in the petition, it could not be denied, that the plaintiff, by virtue of his purchase at the tax sale, and his payment of the money to the city, would become the equitable assignee of the city, and subrogated to all of its rights; and this, though the sale were void. See, on this point, *Anson* v. *Anson*, 20 Iowa, 55, 60, and authorities there cited.

McInerny v. Reed.

But the amount assessed upon the defendant's lot is not an ordinary debt arising out of contract, express or implied, though partaking somewhat of the nature of a debt.

It is a " special tax " " assessed " by the city upon the lot. There is an inherent or common law power to enforce a *debt* proper, as for money lent or services rendered. But there is no such power to enforce the collection of a tax or assessment ; there must be a statute.

Without statute, the city cannot levy the special tax. Without statute, it cannot collect the amount. The defendant, if bound to pay, is bound, by virtue of the power given to the city, " to levy and collect."

The amount is assessed by virtue of the sovereign power in the State to levy taxes and assessments, which power is, by the charter, delegated to the municipality. An amount thus assessed or imposed cannot be said to be an ordinary debt.

Again, suppose the city had made a number of assessments for sidewalks or other local improvements, could it, before judgment, barter and sell these assessments by express contract, assign its right to collect, and, by virtue of such sale and assignment, invest the assignee with the power to sue and collect in his own name ? To allow this to be done, would be to open a most dangerous door, leading, on the one hand, to frauds against the city, and, on the other, to oppression of the citizen or property owner.

It would not do to hold that a city could delegate or farm out either its taxing power or its power to enforce *Argu.* 1. Nature of power. the collection of taxes. It would be a startling proposition to affirm that a city could, for example, sell and assign its tax list to an individual, and authorize him to exercise the high and delicate powers conferred upon the corporation. Why not ? The legal answer is, that these powers are conferred upon the

McInerny v. Reed.

municipality to be *exercised by it*, not to be delegated by it to others. *Thompson* v. *Schermerhorn*, 2 Seld. 92.

If there could not be an *express* contract for the sale of assessments, with power in the assignee to collect in his own name, it would seem to be illogical to hold that equity will infer or imply an assignment with a like power in the assignee to collect by suit in his own name. Equity will not imply an assignment between parties, who by the law are incapable under any circumstances of making an express contract of a similar character. Again, the power is delegated to the *city* "to levy and collect" the tax. As above observed, the defendant is bound to pay, by virtue of the power given by this clause, and by virtue of it alone. But this obliges him to pay to the *city*, upon which the power is conferred, not to some person to whom the city has undertaken to delegate this power. In bestowing the power upon the city, a power the exercise of which is often burdensome and sometimes oppressive, the legislature must be taken to place confidence in the corporation and its officers. There are many reasons why this power should not be held to be communicable to individuals. Such a doctrine would prevent the city from giving lenity, or exercising by itself, and for itself, and in view of the best interests of all, the power which is given to it to collect its own taxes and assessments. We have very carefully revolved this subject in its various bearings, and think it best accordant with sound legal principles, and with sound public policy, to shut the door *in limine* upon a doctrine, which, if pressed to its legitimate consequences, would lead to dangerous results, and which, if not to be thus adhered to, will be an useless anomaly in the law.

Under this view, the plaintiff must look to the city to which he paid his money upon a void sale. What his rights are as against the city, is a

*Marginal notes:*
4. —— equitable assignment.

5. —— void sale no bar to collection.

question not made in the record. That the city (assuming that the power has been regularly exercised) may, notwithstanding a void sale, if its right is not barred, commence a suit in equity to collect its tax and enforce its lien, we have no doubt; and it was so expressly adjudged in the case of *The Mayor, etc.,* v. *Colgate,* above cited. The judgment of the District Court on the demurrer is

Affirmed.