## J. C. Goodrich *et al.* v. The Board of Commissioners of Atchison County.

1. Demurrer — *Objection to Evidence* — *Trial.* On the trial of a cause, a defendant may object to the reception by the court of any evidence under the petition, although his demurrer to the same petition has previously been overruled; and the court commits no error by entertaining and passing upon said objection.

2. Highway — *Opening over Mortgaged Land.* For all purposes of establishing and opening highways under our statute through mortgaged premises, the mortgagor in possession is to be regarded as the owner of the land.

*Error from Atchison District Court.*

ALL the material facts are stated in the opinion herein, filed at the session of the court in November, 1891.

*J. T. Allensworth,* for plaintiffs in error.

*W. T. Bland,* county attorney, and *James W. Orr,* for defendant in error.

Opinion by STRANG, C.: September 24, 1881, one Silas H. Hamilton and Frances B. Hamilton gave Alexander M. Sutherland a mortgage upon a quarter-section of land in Atchison county to secure the sum of $5,300, which mortgage was placed upon record October 9, 1883. Sutherland duly assigned said mortgage to J. C. Goodrich, and on the same day Goodrich assigned an interest in said mortgage of the value of $2,318.05 to Ann B. Sutherland, both of which assignments were placed of record on the 12th day of October, 1883. January 8, 1884, a petition was filed with the county clerk of Atchison county, asking the board of county commissioners to cause a public road to be laid out, in part across and over the land covered by the mortgage above described. March 25, 1884, the road prayed for was established across said land, the viewers assessing damages to the said land in the sum of $250, and awarding the same in the name of T. C. Beard, agent of the mortgagors. Afterward said T. C. Beard appeared before the board of county commissioners and procured an increased allowance of damages in the sum of $100, making a total award of damages of $350, which was paid to said Beard. During the time when said road was being laid out, as well as when the award of damages was paid to Beard, the mortgagors were in possession of the land, and had been ever since the execution of the mortgage. February 3, 1885, the mortgage was foreclosed in the United States circuit court, and the land sold by a master to the plaintiff J. C. Goodrich, for the sum of $2,500. April 11, 1887, this action was begun by the plaintiffs to recover the amount of said award from the board of county commissioners of Atchison county, claiming that they were entitled to the damages as mortgagees of the land, and alleging that said damages were wrongfully paid by said board to the agent of the mortgagors. March 7, 1888, defendants filed a demurrer to the petition, which demurrer was overruled by the Hon. S. H. Glenn, judge *pro tem.*, the regular judge being disqualified to sit in the case. Answer and reply were afterward filed, and the case came on for trial February 5, 1889, before the

regular judge of the district, Hon. Robt. M. Eaton, who in the meantime had been elected and qualified. A jury was obtained, and a witness placed upon the stand, when the defendants objected to any evidence being received under the petition, for the following reasons: 1st, "because this court has no jurisdiction to try this case;" 2d, "because the petition does not state facts sufficient to constitute a cause of action against the defendants." This motion was sustained. A motion for a new trial was then filed, which, upon a hearing, was overruled, and the case brought here for review.

The first question presented is raised by the contention of the plaintiffs in error that the action of the court in overruling the demurrer to the petition settled the law of the petition so far as the trial court was concerned; that having overruled a demurrer to the petition, thus holding the petition to state a cause of action, the trial court could not subsequently in the same trial, when evidence was offered under the petition, sustain an objection to the reception of such evidence on the ground that the petition did not state facts sufficient to constitute a cause of action; that when the court overruled the demurrer to the petition, such action of the court was a final adjudication in favor of the plaintiff as to the sufficiency of the petition, and if the defendant felt aggrieved thereby, its only remedy was by appeal and not by objecting to the introduction of the testimony. We do not think this position is tenable. This is a jurisdictional question, and we think the defendant may raise it at every stage of the trial. Though the court has overruled a demurrer, a party defendant may, in the same trial, object to the reception of evidence under the petition, and thus again secure the attention of the court to and challenge its judgment upon the same question raised by the demurrer; and if the court overrules its objection, it may still raise the question, before the final judgment against it, by a motion for a new trial. The object of a motion for a new trial is to call the attention of the court to alleged errors, that the court may have an opportunity to correct its own errors, if it concludes, even after the

1. Demurrer—objection to evidence—trial.

trial, it has made any, or suffered any to be made.  If it is proper to permit the defendant to argue the question raised by the demurrer anew on a motion for a new trial, we know of no reason why it is not proper to raise and argue the question by an objection to the reception of evidence under the petition.  The object sought to be obtained is the same.  By filing an answer the defendant waives his right to demur, but he does not thereby waive his right to raise the same question that he could have raised by demurrer to the petition, by objecting to the reception of evidence under the petition.  We have examined the cases cited.  The case of *Sanford v. Weeks,* 39 Kas. 649, instead of supporting the position of the plaintiffs, seems to militate against such position so far as it is in point.  In that case Sandford demurred to the petition, which was overruled, and no exception taken.  He then objected to the reception of evidence under the petition, which was the same practice that prevailed in this case, and which is now objected to.  That case also holds that if the defendant had taken exceptions to the overruling of his demurrer, the question raised thereby might have been reviewed by this court.

There is nothing in the case of the *U. P. Rly. Co. v. Estes,* 37 Kas. 229, that supports the contention of the plaintiffs in error.  That case simply holds that a party who seeks to have a ruling on a demurrer to a petition reviewed by this court may either stand on his demurrer, and bring the case direct to this court for review, or take his exception to the ruling, file his answer, and go to trial, and after trial bring his case here and have the ruling on the demurrer reviewed.  That a defendant whose demurrer to the petition is overruled may except, and stand on his demurrer, and come to this court at once and have the question settled as to the sufficiency of the petition, is not denied in this case.  That question is not involved in the case.  The case cited, however, settles the question that he need not stand on his demurrer and come at once to this court, but may take his exception, answer over, and at the end of the trial come to this court and have the question raised by his demurrer reviewed.  The cases cited from Ohio, Nebraska and New

York relate simply to the question as to whether a defendant whose demurrer has been overruled can answer over, and afterward, at the end of the trial, have the ruling on his demurrer reviewed by the superior court. What the law may be in those states upon that question is not very material, as that precise question is not raised in this case, and if it were, the cases in 37 and 39 Kansas, above cited, settle the law so far as this state is concerned.

The next and more important question in this case is, "Are the plaintiffs, mortgagees out of possession, owners" within the meaning of ¶ 5477, General Statutes of 1889? Mr. Lewis, in his work on Eminent Domain, § 324, enters upon the discussion of the general subject as to whether mortgagees are necessary parties to condemnation proceedings, by saying that "the authorities on the question are not only conflicting, but very unsatisfactory." The same author adds: "The cases go almost entirely upon the language of the statutes, as though it was a matter entirely within the control of the legislature." So, in our examination of the question, we have found the authorities thereon inharmonious, and depending very largely upon the language of the statutes, and upon the law relating to mortgages in the states where the decisions are found. In those states where the common-law doctrine relating to mortgages prevails, where the mortgagee is held to be the possessor of a defeasible title to the land, it is generally held that he is a necessary party to the condemnation proceeding; while in states where the mortgage is held to be a mere security creating a lien upon the property, but vesting no estate in the mortgagee, it is generally held that the mortgagee is not a necessary party to condemnation proceedings. In some of the states where the decisions depend upon the language of statutes, such language is broader than it is in others. In some states the statute simply requires notice to be given to the "owner," while in other states the language of the statute in relation to notice requires it to be given to the owner, mortgagee, lien-holder, lessee or other person having an interest therein.

The law of mortgages is well defined in our state.   In *Chick v. Willetts*, 2 Kas. 379, a mortgage is declared to be a mere security, creating a lien upon the property, but vesting no estate whatever in the mortgagee, either before or after condition broken.   It gives no right of possession, and does not limit the mortgagor's right to control the property.

In *Vanderslice v. Knapp*, 20 Kas. 647, Mr. Justice VALENTINE, writing the opinion, says "that a mortgagor of real estate has the right to the possession of the mortgaged property, and to sever and remove timber, wood, sand, earth, coal, stone or anything else therefrom, and to sell the same, unless it unreasonably impairs the mortgage security.   When it unreasonably impairs the mortgage security, the remedy of the mortgagee is not at law, but in equity; not replevin to recover the property severed from the realty, but generally injunction to restrain the commission of waste upon the realty."   Upon this question of the law of mortgages, see *Clark v. Reyburn*, 1 Kas. 281; *Curtis v. Buckley*, 14 id. 456; *Pritchett v. Mitchell*, 17 id. 358; *Alexander v. Shonyo*, 20 id. 705; *Robbins v. Sackett*, 23 id. 304; *Seckler v. Delfs*, 25 id. 165; *Tomlinson v. Thompson*, 27 id. 72; *Perkins v. Dibble*, 10 Ohio, 439; *Norwich v. Hubbard*, 22 Conn. 587; *Astor v. Hoyt*, 5 Wend. 615.   The statute of our state upon the question under discussion (¶ 5477, Gen. Stat. of 1889) reads as follows:

"It shall be the duty of at least one of the petitioners to cause six days' notice to be given in writing to the owner or owners, or their agents, if residing in the county—through whose land such road is to be laid out and established—of the time and place of meeting as specified in the notice of the commissioners."

. The notice of the commissioners is pointed out in ¶ 5476 of the same statutes, and requires the county clerk to give notice "by advertisement set up in the county clerk's office and every municipal township through which any part of said road is designated to be laid out, for at least 20 days; and by publication for two consecutive weeks in a newspaper, if there be one published in the county, setting forth that such petition

has been presented, giving the substance thereof, and that viewers will on the day designated proceed to view said road and give all parties a hearing." In view of the statute in our state in relation to notice in road proceedings, and the law relating to mortgages, and rights of mortgagors and mortgagees, we do not think it was necessary to serve notice on the plaintiffs for the purpose of establishing the road which was laid out across the lands upon which they at the time held a mortgage. There is nothing in our statutes that requires service of notice upon any one in such proceeding except the "owner." It has been seen that in our state a mortgagee of land is not the owner thereof. The mortgagor holds the legal title, and, in the absence of stipulations to the contrary, the right of possession. He is regarded as the owner of the land, and when in possession by himself or agent notice to him or his agent is, in proceedings to establish a public road, notice to the "owner," to the full intent of our statute requiring such notice.

The case of *Railroad Co. v. Wilder*, 17 Kas. 246, goes a long way toward settling the law of this case. In that case, Mr. Justice VALENTINE, speaking for the court, says:

" We think Wilder is entitled to the same damages as though he owned the unincumbered fee of the land. Da Lee is not entitled to any portion of such damages. DaLee is entitled to the $2,000 which Wilder owes him, and to nothing more, except that he holds the legal title to the land (and possibly a lien on the damages awarded if he choose to assert that lien) as a security for his claim on Wilder."

The case of *Kuhn v. Freeman*, 15 Kas. 423, is in line with the above case. The law upon this question is fully settled in many of the states.

In *Parish v. Gilmanton*, 11 N. H. 293, Justice Woods says:

"In the third place, it is objected that certain mortgagees of land over which the road is laid were not notified of the proposed laying out of the way, and that no damages were awarded them. By the first section of the statute, as already seen, it is provided that notice shall be given to the owners of the land through which the highway is to be laid out. Whether the exception can prevail depends upon the proper

decision of the question whether the mortgagee is to be regarded as the owner of the land for the purpose of receiving notice, and having damages awarded for the injury done in taking easement to the lands mortgaged. It does not appear in the present case that the mortgagee was in possession. In such cases, we think that the mortgagor in possession is to be regarded as the owner, and as such is entitled to the notice. Indeed, it would now seem to be a firmly-established doctrine in this state, that the mortgagee is entitled to have his mortgage interest regarded as real estate, and himself as the owner of the land mortgaged, so far only as to enable him to protect and avail himself of his just rights intended to be secured to him by the mortgage, and to give him all necessary and appropriate remedies for that purpose, and that in all other respects, and for all other purposes, it is to be treated as a chattel interest; and we think this is not one of the cases in which the mortgagee is entitled to be regarded as the owner of the land mortgaged."

In *Read v. City of Cambridge*, 126 Mass. 427, the court says:

"In every taking of land for public use, the mortgagor is regarded in this commonwealth as having, at law, the entire estate in the premises, and entitled to recover the whole value thereof, estimated according to the provisions of the statute, without any deduction on account of the mortgages and liens thereon."

In *Paine v. Woods*, 108 Mass. 160, Wells, J., delivering the opinion of the court, says:

"This is a complaint of flowage, under the mill act. The complainant is the mortgagor in possession of the land flowed. The mortgage was given before the erection of the dam of the respondents. The mortgagee has never entered or taken any steps toward foreclosure. The ground of defense is, that the complaint cannot be maintained by the mortgagor without joining the mortgagee. The respondents insist that, as the mortgagee will not be bound by the judgment, they will be exposed to the risk of making double compensation for the same injury, if these proceedings are maintained. This objection is not tenable. For all the purposes of these proceedings, the mortgagor in possession is a sufficient party, without joining the mortgagee."

"A mortgagee out of possession is not the proprietor of the mortgaged premises, and in common parlance is never spoken of as such; nor is he so recognized in a legal sense. In truth the mortgagee has only a lien, and cannot be considered or treated as a proprietor or owner of the mortgaged estate." (*City of Norwich v. Hubbard,* 22 Conn. 587.)

"In laying out new highways, either by selectmen or by the county courts, or in repairing old ones, no provision is made by law for notice to be given to mortgagees, nor in practice is this ever done. The interests of the mortgagees are not regarded in these proceedings. They are necessarily connected with the interests of the mortgagor, and in this respect subject to them." (*Whiting v. City of New Haven,* 45 Conn. 305.)

"In a complaint under the mill act by a mortgagor, it is no defense that the respondent has acquired the right of the mortgagee by an assignment of the mortgage." (*Vaugh v. Wetherill,* 116 Mass. 138.)

"The mortgagor of land, taken by a railroad corporation for the purpose of their road, may recover the full amount of damages, without regard to the mortgagees." (*Ballard v. Ballard Vale Co.,* 5 Gray, 468.)

We have examined the case of *Severin v. Cole,* 38 Iowa, 463. The cases therein referred to in 2 Ohio State, 114, and 4 id. 101, in support of the position taken in that case, relate to mechanics' liens, and are not analogous cases, and do not depend upon the same principle as the case in which they are cited, nor upon the same principle as the case at bar.

The case of *Ballard v. Ballard Vale Co.,* 5 Gray, 468, does not sustain the opinion promulgated in the Iowa case. The case in 5 Gray was under the mill act of Massachusetts. It was brought by the mortgagee in possession after foreclosure, and did not claim damages for any of the period of time during which the mortgagor was in possession of the premises. In fact the case conceded that, under the statute which provided for the assessment of annual damages, the mortgagor is entitled to such annual damages while in possession. And it was undecided and left an open question as to whether the mortgagor in possession could, under the same statute which provided also for the assessment of damages in gross, that is,

damages for all time, elect to take damages in gross and thus deprive the mortgagee of the right to recover annual damages after the reduction of the land to his possession; and whether the mortgagor in possession could release the owners of the mill, the dam to which caused the overflow, from the damages for all time, and thus conclude the mortgagees after obtaining possession.     Merrick, J., in that case, uses the following language:

"The respondents [assignees of the mortgagor] have never had any interest except that which they derived from Marland, the mortgagor.     His deed to them was a mere quitclaim and release of all his right, title and interest in the premises; and these consisted only of the right of redemption, and the right of possession, previous to a breach of the condition of the mortgage.     Of the former the respondents have never availed themselves; and of the latter they have had the uninterrupted advantage and enjoyment—no claim being made for damages occasioned by the flowing before the time when the complainant entered upon and took possession of the premises for the breach of the condition of the mortgage and to foreclose the right in equity of redemption.     The right of the respondents is now superseded by the paramount title of the complainant; and they have therefore no defense to set up against the complaint, and can show no reason why it should not be maintained. It has been argued, for the respondents, that a mortgagor in possession has the power and right effectually to release and discharge a mill-owner from all claims for damage which have been or which may be occasioned to the mortgaged premises, either by the past or future maintenance of the dam, used and to be used forever, for the purpose of raising water to work his mill.     Without intending in any degree to sanction that position, as a principle of law resulting from a just interpretation of the provision of the statute for the support and regulation of mills, it is sufficient to say that the determination of this question is not requisite in this case; for it does not appear that Marland (mortgagor) has released or discharged, or even attempted to release or discharge, the respondents from all the claim to which they were or might become liable by reason of the maintenance of their dam, and the consequence to the complainant's land by overflowing it with water."

Mr. Justice Cole, in the opinion of the Iowa case, says: "The case of Breed v. Eastern Rld. Co. is only reported as a

note to the case of Ballard *v.* Ballard Vale Co., *supra.*" That is true, but the principle decided in the case of Breed *v.* Eastern Rld. Co. is carried back and made a part of the syllabus in the case of Ballard *v.* Ballard Vale Co. With this examination the Iowa case loses some of its force, and we prefer to follow the precedents cited from other states, as being in line with our authorities so far as this court has already gone in analogous cases, and also in line with our numerous decisions affecting the law of mortgages, and the rights respectively of

2. Highway— opening over mortgaged land.

mortgagors and mortgagees, and hold that, for all the purposes of opening highways, the mortgagor in possession is to be regarded as the owner of the land. Whether a mortgagee may, by a proceeding in equity, intervene, and have the damages applied in accordance with what the court under all the circumstances might consider as equitable, we are not called upon in this case to decide, and therefore leave that question open, to be settled in a case wherein it is raised. It will be seen that there is no provision in ¶ 5477 for notice to non-resident owners who have no agent in the county; nor is there elsewhere in our statute any provision for notice to them, except the notice required to be given by the county clerk in ¶ 5476, above referred to. As that notice is required to be posted in the county clerk's office and each municipal township through which the road or any part of it is to be established, and also published in a newspaper of the county, if there is one in the county, the legislature probably intended this notice to reach non-resident owners. But as, under our view of the law, the plaintiffs — mortgagees out of possession at the time the road was established — are not to be regarded as the "owners," it matters little, so far as this case is concerned, what the legislature might have intended as to non-resident owners.

We recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.