JAMES L. HOLT, ASSESSOR AND COLLECTOR OF TAXES IN AND FOR THE FIRST TAXATION DIVISION OF THE TERRITORY OF HAWAII, *v.* W. C. ACHI, KAPIOLANI ESTATE, LIMITED, A CORPORATION, GERMAN SAVINGS & LOAN SOCIETY OF SAN FRANCISCO, A CORPORATION, AND JAMES F. MORGAN, TRUSTEE.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED DECEMBER 11, 1906.     DECIDED DECEMBER 20, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

TAX LIENS—*enforcement by foreclosure in equity.*

In the absence of any statutory method of enforcing a tax lien it may be foreclosed in equity.

This was a bill in equity brought by the tax collector to enforce by foreclosure a statutory lien for delinquent taxes, namely, $2945.93 for the year 1902 and $1400 for the year 1903, upon certain lands of the defendant Achi, together with the penalty imposed by law for nonpayment of taxes.

The respective interests of the defendants are as follows: The lands on which the taxes were assessed were conveyed February 5, 1901, by the Kapiolani Estate to Achi who secured payment for the purchase money, $300,000, by mortgage of the property which was assigned May 31, 1902, by the Kapiolani Estate to the defendant German Savings & Loan Society. Achi, after mapping out and selling certain lots from the land purchased by him, the taxes on which are not included in the above, made a trust deed December 4, 1903, to the defendant James F. Morgan under which the bill alleges that Achi, the Kapiolani Estate and Morgan "claim adverse interests." In December, 1903, the plaintiff brought assumpsit against Achi for these taxes and obtained judgment therefor upon which execution, issued January 19, 1904, was returned February 17, 1904, nulla bona. An alias execution, issued the same day, was returned February 19 nulla bona.

The defendants' demurrers were sustained on the ground that the case is not one of equity jurisdiction and a decree was accordingly made dismissing the bill. The plaintiff appealed. The statute provides:

"Every tax due upon property shall be a lien upon the property assessed; and every tax due upon improvements upon real property assessed to others than the owner of the real property, shall be a lien upon the improvements; which several liens shall attach as of September 1 in each assessment year, and shall continue for two years." R. L., Sec. 1266.

Act 89, Laws of 1905, provides for foreclosure of such tax liens "in the same manner and form as ordinary foreclosure proceedings," but this case was brought before the amendment.

The question now presented is whether the statutory method for enforcing payment of taxes is exclusive, which provides:

"If any tax be unpaid when due, the assessor may proceed to enforce the payment of the same, with all penalties as follows:

"1.  By distress upon so much of the goods and chattels of the delinquent taxpayer as he may deem sufficient to satisfy the payment of the taxes due and interest thereon from the date when the same became due and all penalties and costs and expenses of such distress.

"2.  By suit or action in assumpsit, in his own name, on behalf of the Territory of Hawaii, for the amount of taxes, penalties and costs and interest, in any district court, irrespective of the amount claimed.  Execution may issue upon any judgment rendered in any such suit, which may be satisfied out of any real or personal property of the defendant in such suit, without other or further authority." R. L., Sec. 1269.

The statutory remedy by distress is thus confined to levying for taxes on goods and chattels and to a judgment for taxes which has no priority over other judgments and cannot be enforced here, as it can be in some other jurisdictions as a judgment in rem, by a sale of the land on which the tax is assessed. If the statute so provided there would be no occasion for equity to enforce the judgment since nothing but ignorance or carelessness would prevent the enforcement of the judgment against the land by the ordinary law writs.

The defendants contend that the statutory method of securing payment of taxes by distress on personal property or by obtaining a judgment in an action for the taxes and taking out execution on the judgment is the only available procedure; that the tax lien, being legal and not equitable, can be enforced in no way which is not provided by statute and that in the absence of a statutory procedure for its enforcement equity cannot afford relief without legislative authority therefor; that it is not a judicial question whether the statutory procedure for the collection of taxes is effective or not that being a subject of exclusively legislative consideration and that inadequacy of a remedy, in the sense that it fails to produce the money to satisfy a claim,

does not give equity jurisdiction. Numerous cases are cited for this contention, all of which have received our consideration. The defendants also point out that the cases cited by the plaintiff in support of equitable jurisdiction for enforcing tax liens presented special features of equitable jurisdiction, as, for instance, *Gilchrist v. Helena,* 58 Fed. 708, a case of marshalling securities; *U. S. v. Pac. R. R. Co.,* 4 Dill. 66, in which the property had passed into other hands and equity was resorted to in order to bring in the subsequent owner and subject its rights to the decision; or, as in *Lockett v. Robinson,* 31 Fla. 134, the object of the suit was merely to have a declaratory decree that a lien existed—in that case a mechanics' lien—and *McInerny v. Reed,* 23 Ia. 410, in which a bill was brought not to enforce an existing lien but to declare and create a lien that did not exist; or else that there was statutory authority for the jurisdiction as in *Arians v. Brickley,* 65 Wis. 26, the case being that of a common law lien which by statute could be enforced "by action in any court having jurisdiction," an injunction being sought the court held that equity had concurrent jurisdiction; or that the question of enforcing a statutory lien was not involved as in *Hibernian S. & L. Society v. Ins. Co.,* 138 Cal. 259, a suit to foreclose a mortgage in which the insurance company held a subsequent lien which the court held should be satisfied out of the surplus after the payment of the mortgage.

It is claimed that not only was the point not involved in this case but that the only authorities cited by the court for its assertion that equity has jurisdiction, being the *Gilchrist* and *Lockett* cases, supra, do not sustain that view. In like manner *Grant v. Bartholomew,* 57 Neb. 673, holding that equity will foreclose a tax lien, is based on the *McInerny* case, supra. *Fitch. v. Creighton,* 24 How. (U. S.) 159, is based on an Ohio statute.

The defendants say that even in the *Gilchrist* case the court admitted the correctness of the doctrine for which they now contend as applied in *Machine Co. v. Miner,* 28 Kan. 441, and rested its decision solely upon the ground of the necessity of

adjudicating priorities among conflicting liens. *Church v. Garrison,* 75 Cal. 199, did not involve the question of equitable jurisdiction to enforce a statutory lien—in that case being a lien upon a threshing machine for the enforcement of which the statute gave a complete remedy. The suit was brought to prevent the machine being carried out of the county.

The decisions referred to are unsatisfactory as adjudications upon this question and are fairly open to the criticism upon them made by the defendants. But a decision may be right although its reasoning is unsatisfactory and citations in its support do not sustain it and although as an obiter dictum it is not an adjudication. Is it not true then, as said by the court in the California case cited, that "The enforcement of liens, whether equitable or statutory, is a well recognized function of courts of equity and the only distinction in this respect between the different kinds of liens is that in the case of the latter equity will interpose where there is no other adequate remedy ?"

"The jurisdiction of a court of equity, invoked to enforce a statutory lien, rests upon the statute and can extend no farther." 1 Jones on Liens, Sec. 112, citing the language of the syllabus in *Canal Co. v. Gordon,* 6 Wall. 561.

The facts in that case, however, show that the question involved was not one of jurisdiction but whether a mechanics' lien could be limited to that portion of a canal which was constructed by the plaintiff or extended to the entire canal.

It is said by the same author: "A lien which is purely legal, which is created by statute *and is dependent upon statutory provisions for its enforcement,* cannot be aided in equity if the lien fails at law. In the absence of statutory provisions no lien will be foreclosed in equity except in conformity with established rules of equitable jurisprudence. Thus, a general lien of a judgment will not be turned into the specific lien of a decree in equity and enforced by a sale under such decree. Equity will not interfere where there is a full and complete remedy by statute. The foreclosure of a lien is either a statutory or an equitable proceeding. At law there is no remedy beyond retaining possession." Ib., Sec. 94.

"In general there is no remedy for enforcing the (common law) lien unless it is given by statute." Ib., Sec. 1033.

"Generally a court of equity has no jurisdiction to enforce a common law lien by sale merely because there is no remedy at law, or because the retaining of possession under a passive lien involves expense or inconvenience. Generally a lien at law or by statute can be enforced only under express statutory provisions. An equitable form of procedure may be expressly provided; but in the absence of such provision, a lien cannot be enforced in equity unless jurisdiction is acquired under well established rules." Ib., Sec. 1038.

In the Ohio case, cited in the note to Sec. 94, which is referred to in the note to Sec. 1038, it was held that a judgment creditor has no lien in equity upon his debtor's choses in action until a bill is filed to charge them. The citations in Sec. 1033, supra, cover the ground taken by the court in the leading case of *Lickbarrow v. Mason,* 6 East 21, that a right of stoppage in transitu does not include a right to sell; so with the citations from 3 Gray, 382, a lien for materials and labor which did not include a right to sell without an order of court, and *Rodgers v. Grothe,* 58 Pa. 414, which merely holds that the common law lien of a bailee for service lasts only while he has possession and does not authorize a sale by him; also 6 Allen, 246, holding the same in respect of a carrier's lien for freight; but in the case from 14 Allen, 139, the statute authorized an order of court to sell the property subject to a mechanics' lien.

None of the authorities cited by Jones, unless 28 Kans. 441, which is not at hand, appear to sustain the broad doctrine that equity will not enforce a statutory lien in the absence of any prescribed procedure for its enforcement at law.

"A court of chancery has no jurisdiction to enforce the lien upon real estate given by statute for taxes assessed thereon. Such lien is purely local in character—the creature of statute, not arising on contract and can be enforced only in the mode prescribed by law." 1 Desty, Taxation, 754, citing *People v. Biggins,* 96 Ill. 481, a case fully relied on by the defendants and to which we will shortly allude.

But "A lien given by statute may be enforced in a court of equity although no mode for its enforcement may be given by the statute." Ib., p. 754, citing, besides a Colorado case, 22 Conn. 587; 39 Cal. 389; 23 Ia. 410; 4 Lea 54; 3 Lea 639.

In the Colorado case, *Dobbins v. Col. & S. Ry. Co.,* 75 Pac. 156, a tax lien on a railroad was established in equity in the absence of statutory provision for its enforcement. The Connecticut case appears to be based on a provision in a municipal charter authorized by statute and *Cole v. Rice,* (Conn.) 51 Atl. 1083, is based on an express statute. The Iowa case is referred to above. The Tennessee cases are not before us. They are referred to in 2 Cooley on Taxation, 3 Ed. 877, n. 1, as showing that in that state "the chancery courts seem to have inherent jurisdiction for the enforcement of liens for taxes."

Pomeroy says of statutory liens that in some of the states. "These liens, especially . those charged upon real estate, as. mechanics' liens, mining liens and the like, are enforced by ordinary equitable actions resulting in a decree for sale and distribution of the proceeds identical in all their features with suits for the foreclosure of mortgages by judicial sale." 3 Eq. Jur., 3 Ed. Sec. 1269. Many of his citations, however, certainly those from Indiana, Minnesota, Iowa, Montana and Washington, from which states are cases in 94 U. S. 545 and 101 U. S. 721, and the later New York decisions, are based on statute. But this is not true of *N. Y. v. Colgate,* 12 N. Y. 140 (1854), an action to enforce the tax lien, the plaintiffs. claiming that the taxes were a lien "in like manner as though its payment had been secured by mortgage thereon." The court, after referring to the remedies for collecting assessments. by distress or by an action of debt or assumpsit, and finding no "difficulty from the circumstance that other remedies for the collection of these assessments are given by statute," said:

"A case might exist where none of these remedies would be exactly adapted to the case. Both the owner and occupant might be without personal property, and purchasers under an ex parte sale are proverbially unsafe. By providing a lien in the nature of a mortgage, the party assessed might be called

into court to show, if he could, that the proceedings were irregular, and the purchaser, under a bill of foreclosure, would have the protection of a judgment of the court affirming the legality of the lien."

Coming now to *People v. Biggins,* supra, which holds that a tax lien is enforced only in the manner prescribed by the law which gave it existence, which "provided the various steps that shall be taken to enforce that lien," which, said the court, "can only be enforced by a strict compliance with the statute, * * * the lien given for taxes cannot be foreclosed in equity as the various steps to be taken to enforce a lien for taxes in order to collect the same are as fully and as clearly defined by the revenue law as the mode is pointed out by the statute under which a judgment lien may be enforced and the judgment collected." As the statute made it the duty of the tax collector to return the delinquent tax list to the county clerk whereupon judgment could be rendered *against the land* and the land sold for the taxes due thereon, "Here is an adequate and complete plan devised by the legislature for the purpose of enforcing liens." The case decides nothing more than that equity will not enforce a lien which can be enforced by statute.

It may be inferred that there is a similar statute in West Virginia since it is said in *State v. Baltimore & O. R. Co.,* 41 W. Va. 81, 23 S. E. 677 (1895), "No lien on real estate for taxes can be enforced under the statute even by the state unless such real estate has first been returned delinquent." *Marye v. Diggs,* (Va.) 51 L. R. A. 902 (1900), puts the matter clearly as follows: "The absence of remedies in the two states, Virginia and West Virginia, through all their history is easily explained. The remedies given by statute were better, more speedy and efficacious. These were sale of land for taxes and distress of personalty without exemption. Why fill the courts with suits, burden the state with endless delays of litigation and burden the citizen with costs?" The statute provided a specific mode "whereby the land may be sold to satisfy such a lien."

Without further examination of the cases we are aware of no adjudication opposed to the *Colgate* case, supra, unless it be *Montzuma Valley Co. v. Bell,* 20 Colo. 175 (1894), which appears to be directly contrary to the later case of *Dobbins v. Ry. Co.,* supra. We understand that the correct doctrine is that "A court of chancery will lend its assistance to the enforcement of a legal lien." Bispham's Eq., 3 Ed. Sec. 420, citing *Shotsmans v. Ry Co.,* L. R. 2 Ch. 332, in which the plaintiff sought to enforce in equity a right to stoppage in transitu. The court, although holding that the goods had been delivered so as to preclude stoppage in transit, had "no doubt of the plaintiff's claim being a proper subject of a bill in equity," Cairns, L. J., saying he "should be prepared to hold this to be a case entirely within the province of this court and depending on the ordinary principles which regulate in equity the relations of mortgagor and mortgagee, whether of real or personal property, although, for obvious reasons, cases of this kind are more generally and more conveniently brought into a court of law."

With statutes providing, as ours do not, a procedure whereby a claim for a tax on land becomes a judgment against that land which may be satisfied by its sale a court of equity when asked to foreclose a tax lien might well say that the legislature having devised a scheme for collecting taxes equity would not devise another whether better results would follow or not, that the statutory lien must be enforced in the method provided by statute and, in the absence of such statute, that equity will not substitue its power to subject property to its decrees for the statutory methods, such as above described, for collecting taxes, meaning thereby that equity declines to take concurrent jurisdiction because of inadequacy or absence of the relief afforded at law.

The decree appealed from is reversed and the case remanded to the circuit judge with leave for the defendants to plead or answer within ten days thereafter.

*J. Andrade,* with whom was *M. F. Prosser, Deputy Attorney General,* on the brief, for plaintiff.

*A. Lewis, Jr.,* (*Smith & Lewis* on the brief) for German Savings & Loan Society and James F. Morgan, Trustee.

*C. W. Ashford* for W. C. Achi and Kapiolani Estate, Limited.