## Rodgers *versus* Grothe.

1. At common law the lien of a bailee for service lasts only while he has possession.

2. His relation to the bailor is personal, and grows out of the confidence the bailor has in his skill and fidelity when intrusting to him his property for service to be performed to or on it.

3. The law implies a contract that the bailee will perform the service skilfully, and return the chattel faithfully on payment for his service.

4. If the bailee sell or pawn the bailment, it is a breach of his fidelity to the bailor, and he forfeits his right of lien.

5. The Act of 14th December 1863 (Common Carriers) relieves the bailee of constant possession in order to enforce his lien.

6. A private sale to pay the lien would not carry the title to the purchaser.

7. Since the Act of 1863, the property in the hands of the bailee is security for payment, with the means of procuring satisfaction by sale and conversion, and the rule of the common law has ceased.

8. A transfer of the charge upon the property together with its possession, effects a substitution of the purchaser to the right of the bailee to receive the money and to retain the property as security when the sale has been bonâ fide.

9. The purchaser can give the owner an acquittance for the debt, and has the same right to proceed to demand and enforce payment after notice as the bailee had.

10. The rights of the owner are unchanged; he is bound only for the charge as it existed in the bailee, and can demand and receive his property on the same terms he could from the bailee.

May 6th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *York county :* to May Term 1868, No. 19.

This was an action of replevin for a horse, by Frederick Grothe against Edward Rodgers, brought May 17th 1865. The defendant pleaded non cepit and property.

[Rodgers *v.* Grothe.]

The plaintiff proved that the horse was in the possession of the defendant when the writ was served, and that plaintiff had bought him at a government sale. The plaintiff then gave evidence that he had delivered the horse to John Beam in September 1864, under an agreement that if cured plaintiff should pay him $10, and $1 per month for pasture, and other feed at cost; and that in March or April 1865, he tendered Beam $65 for his charges on the horse.

The defendant called Beam, who testified that he received the horse from Grothe to cure, and when he found he could not cure him in a month, he gave notice to Grothe to take him away and pay the amount then due.

He then offered to prove that the plaintiff did nothing in accordance with this notice, except to leave the horse in the possession of Beam under treatment as before; that Beam continued to care for and treat the horse through the winter, and on the 1st of March requested the plaintiff to take the horse on payment of the amount then due to Beam; that the plaintiff did come and offer to Beam much less than was then due, which Beam did not accept; that the plaintiff made various efforts to get the horse into his possession without paying Beam; that Beam being unable to get payment from plaintiff, and having given due notice to plaintiff that unless payment was made by plaintiff to him he would sell the horse; afterwards, about the 8th or 10th of May 1865, transferred the horse with all his claims upon him, to the defendant for full value.

On objection of the plaintiff the offer was rejected and a bill of exceptions sealed.

The defendant then offered two letters from Beam to plaintiff, the first dated October 10th, 1864, stating that there was due Beam $7, informing plaintiff that the horse was in bad condition, asking what he (Beam) should do with the horse, &c., and requesting a reply by return mail; the second letter was dated March 1st 1865, telling plaintiff to take the horse away or send him $110, the amount of his bill, before March 8th, or he would have to sell the horse to pay expenses, &c.

The offer was rejected and bill of exceptions sealed.

The defendant requested the court to charge:

" 1. That if the jury believe that Beam transferred the horse with all his claims on him, for full value to the defendant, the plaintiff cannot recover without proving that he tendered to Beam or to Rodgers the amount due to Beam by Grothe at the date of the transfer.

" 2. That if the jury believe that Beam transferred to the defendant for full value the possession of the horse, with all Beam's claims upon the animal, the plaintiff could not recover in this suit, if entitled to maintain it, more than the value of the horse,

[Rodgers *v.* Grothe.]

deducting the amount due to Beam by Grothe at the time of the transfer.

3. That *actual* notice is equivalent to *constructive* notice, and if the plaintiff had actual notice of the alleged sale by Beam to the defendant in due time prior to the sale, after personal demand on the plaintiff by Beam to pay his charges on the horse, and the plaintiff's refusal to pay the same (if the amount alleged to have been tendered was not equal thereto), the plaintiff cannot now object to the validity of the said sale, if a sale for full value and bonâ fide was made.

4. That if the jury believe that Beam transferred to the defendant for full value the possession of the horse with all Beam's claims upon him, after Beam had made personal demand of the plaintiff of the amount of his charges in respect of the horse, and the plaintiff had refused to pay the same (if they exceeded the amount alleged to have been tendered by Grothe to Beam therefor), and Beam had given more than sixty days notice to Grothe of his intended sale in default of payment, the plaintiff cannot recover in this suit upon the evidence in the case.

5. That if the jury believe that Beam transferred to the defendant for full value the possession of the horse with all Beam's claims upon him, after Beam had made personal demand of the plaintiff of the amount of his charges in respect of the horse, and the plaintiff had refused to pay the same (if they exceeded the amount alleged to have been tendered by Grothe to Beam therefor), and Beam had given due notice to Grothe of his intention to sell the horse, in default of payment of said charges, the plaintiff cannot recover, if entitled to recover at all, more than the value of the horse, deducting the amount of said charges.

To these points the court (Fisher, P. J.) replied:—

" The court being of opinion that these points do not arise in the case, and that to answer them would tend to mislead the jury, refuse to answer them in writing."

He further charged:—" The facts of the case seem to be that the plaintiff purchased the horse at a sale made by the United States. That he gave him to a certain John Beam to be cured of a running from the nostrils, or some other disease, upon a contract; that the parties differed about the amount of compensation to be paid by Grothe to Beam, and that Beam supposing he had a lien on the horse for his veterinarian services and the keeping, sold or traded the horse to the defendant, who claims to hold him under that title. Whether these are the facts the jury will determine. If they are, the question arises, can the defendant retain possession of the horse for the lien that John Beam had on him? We think not. We think that when the property was transferred to Rogers he did not take the horse with the lien attached to him, and cannot hold him for the lien in the same manner Beam could

[Rodgers *v.* Grothe.]

have done. If he purchased him from Beam, can he retain him from the plaintiff and set up property in himself under the title derived from Beam? We think not. Beam had no right to sell or dispose of him in the manner he did, if he obtained him from Grothe to cure him, and had no other title to retain him than his lien for his services in curing him of his disease and the keeping. We think that the law provides for Beam a different remedy than that to which he resorted to obtain the amount due him." * *

" We think that whatever lien Beam had on the horse, either for his keeping or his professional services, he could not transfer with the horse to the defendant, and that the moment he parted with him the lien was gone, and he had only his remedy by action at law." *　*　*　*　*　*　*　*　*　*

" This remedy he still has. These being the views entertained by the court, if the jury find the facts as the court have supposed them to be, the duty of the jury will be to find for the plaintiff the value of the horse at the time he came into the possession of the defendant, with damages for his detention."

The verdict was for the plaintiff for $154.65.

The defendant took a writ of error, and assigned for error the rejection of his offers of evidence and the portions of the charge given above.

*J. L. Mayer* (with whom was *John Evans*), for plaintiff in error. —Beam had a lien: Lord *v.* Jones, 24 Maine 429; Act of April 7th 1807, § 1, 4 Sm. L. 403, Purd. 536, pl. 14; Young *v.* Kimball, 11 Harris 193; 2 Kent's Com. 635; Chitty on Cont. 594; Hoover *v.* Epler, 2 P. F. Smith 524. Beam had a right to sell the horse at public sale: Act of December 14th 1863, Pamph. L. (1864) 1127. The common-law lien was a right only to detain; Pothonier *v.* Dawson, 1 Holt 383; Doane *v.* Russel, 3 Gray 382. The Case of an Hostler, Yelverton 66; Binns *v.* Pigott, 9 C. & P. 208; Johnson *v.* Hill, 3 Starkie 172; Grinnel *v.* Crook, 3 Hill 490; Gump *v.* Showalter, 7 Wright 507; 2 Kent's Com. 626, 639, 642; Nash *v.* Mosher, 19 Wend. 431; McCombie *v.* Davies, 7 East 5; Daubigny *v.* Duval, 5 T. R. 604. A factor has a right to deliver goods as a pledge to the extent of his lien: Story on Bailments 216; Urquhart *v.* McIver, 4 Johns. R. 103; Act of April 14th 1834, § 4, Pamph. L. 375, Purd. 453, pl. 4; Donald *v.* Suckling, 1 Law Rep. Q. B. 585; Story on Bailments 325.

An irregular sale might not change the property, but if not made fraudulently would not destroy the lien: Spragg *v.* Schriver, 1 Casey 282; Briggs *v.* Boston and Lowell Railroad, 6 Allen 246; Leigh's N. P. 1482; McIntyre *v.* Carver, 2 W. & S. 396; Boughton *v.* Bruce, 20 Wend. 234. The plaintiff should have tendered the amount due Beam: Everett *v.* Coffin, 5 Wend. 603.

8 P. F. Smith—27

[Rodgers *v.* Grothe.]

*C. B. Wallace,* for defendant in error.—In the absence of a statute authorizing it, the bailee could not sell the bailment for his lien: Doane *v.* Russell, 3 Gray 382. A *public* sale was necessary: Act of 1863, *supra;* 21st of March 1806, § 13, 4 Sm. L. 332, Purd. 41, pl. 5; Broughton *v.* Journeay, 1 P. F. Smith 31. Lien is a personal privilege: 2 Kent's Com. 639; Story on Agency 462, § 367; McFarland *v.* Wheeler, 26 Wend. 473; Clemson *v.* Davidson, 5 Binn. 398; Stoughton *v.* Rappalo, 3 S. & R. 563; McIntyre *v.* Carver, *supra;* Daubigny *v.* Duval, 5 T. R. 605; McCombie *v.* Davies, *supra;* Holly *v.* Huggeford, 8 Pickering 73; Mount *v.* Williams, 11 Wend. 77; Nash *v.* Mosher, *supra;* Saltus *v.* Everett, 20 Wend. 267; Guilford *v.* Smith, 1 Shaw 49; Bradley *v.* Spofford, 3 Foster 444; Loeschman *v.* Machin, 2 Starkie's Rep. 512; Robinson *v.* Baker, 5 Cushing 137.

The opinion of the court was delivered, May 14th 1868, by

AGNEW, J.—At the common law the lien of a bailee for service lasts only while he retains the possession. His relation to the bailor, the owner of the chattel, is a personal one, and grows out of the confidence the bailor is presumed to repose in the skill and fidelity of his bailee, when intrusting his property to him for the service intended to be performed upon or toward it. The law implies a contract on part of the bailee to perform the service skilfully, and then to return the chattel faithfully on payment for his service. Hence if he sell or pawn it away he is guilty of a breach of his fidelity to the bailor, and at once forfeits his right of lien. The authorities cited by the defendant in error clearly show this to be the law; and so far the learned judge would have been justified in his rulings. But when the Act of 14th December 1863 (Purdon by Brightly 1344) gave to the bailee the power to sell the property at auction in order to enforce his lien, it introduced a change in the relation of the parties which relieved the bailee from the duty that required constant possession as the means of enforcing his lien. The property in his hands then became a security for his claim with the means of enforcing payment. The property was thus capable of transfer to any one who would bid for it in the due course of procedure, and of conversion into money. The relation between the parties was thus changed in its most important and peculiar feature. But in this case the bailee did not pursue the Act of Assembly by making a public sale after notice to the owner to come and take away his horse and pay the charge upon him. The sale, it is very certain, did not carry the title, and left the defendant, who was the purchaser, unprotected against the demand of the plaintiff as the owner of the horse in an action of replevin; and this brings us to the only substantial question in the cause. The defendant claimed the

[Rodgers *v.* Grothe.]

benefit of the lien of the bailee, and the right to retain the horse until payment of the bailee's charge, and for this purpose offered to prove that after the bailee gave notice to the plaintiff to pay his charge, and after waiting the sixty days required by the act, the bailee "transferred the horse *with all his claims upon him* to the defendant for full value." This offer the court rejected on the ground of irrelevancy. Though right under the common law, we think the court erred in view of the change in the relation wrought by the statute. The property in the hands of the bailee being now a security for payment, with the means of procuring satisfaction by a sale and conversion, the reason of the common-law rule has ceased. There seems to be now no good reason why a transfer of the debt or charge upon the property, together with the possession of the preperty, should not effect a substitution of the purchaser to the right of the bailee to receive the money, and to retain the security until payment, where the sale and transfer have been bonâ fide, and there has been no fraud or abuse of the owner's property. As the owner of the charge, the purchaser is capable of giving the owner of the property a sufficient receipt or acquittance for the debt, and has in equity the same right to proceed regularly to demand payment, and to enforce it by a sale in due course of law after notice, as the bailee had originally. The rights of the owner of the property remain unchanged. He is bound only for the charge as it existed in the bailee, and can demand and receive his property from the purchaser precisely on the terms he could do if his property yet remained in the bailee's hands. In the absence of fraud or removal of the property out of reach, or any other act of abuse of the original relation of bailment, there seems to be no equity in permitting him to recover without doing equity by paying or tendering the charge which is a lien on the property. We are of opinion that the court below erred in ruling out the defendant's offers. These remarks sufficiently indicate the principles upon which the case should be retried.

Judgment reversed, and a *venire facias de novo* awarded.