## Lemington B. & L. Association v. Weddell, Appellant.

Argued May 8, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Joseph B. Weddell,* for appellant.

*A. L. McLaughlin, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., October 3, 1934:

Appellant, a member of the bar of Allegheny County and solicitor for Lemington Building and Loan Association (petitioner below and appellee herein) from April, 1919, to February, 1933, has appealed from an order of the court, of which he is an officer, making absolute a rule upon him to show cause why certain moneys, admittedly received by him as such solicitor, should not be paid over to the association.

The proceeding was instituted by a petition for a rule under Section 28 of the Act of June 16, 1836, P. L. 784, (17 PS §2046), "relating to the jurisdiction and power of courts." This section provides, inter alia, that the several courts referred to in the act shall have power "to make rules upon attorneys for the

payment of money and the delivery of deeds and other papers in their hands, belonging to their clients, and in every such case to enforce obedience to such rules by attachment.''

The petition, after averring the employment of appellant and that he was authorized, inter alia, ''to attend to the foreclosure of all properties upon which [the association] held mortgages'' in default, charged that appellant had received three separate sums of money (aggregating $959.71) belonging to petitioner and which he was in duty bound to pay over to it.

The largest item was one for $720.71, which amount, it was averred, had been placed in the hands of appellant by the association on October 10, 1932, for the specific purpose of turning it over to the sheriff of Allegheny County in payment of the bid made by appellant for the association at a sheriff's sale of a property (referred to as the Johnson property) upon which it had foreclosed a mortgage. The bid was the amount of the costs and taxes. In this connection, it was charged that, although demand has been made upon appellant to pay the designated amount to the sheriff in completion of the transaction and so that petitioner might obtain its deed, that demand has not been complied with. In the next place, it was alleged that the sheriff of Allegheny County on November 15, 1932, delivered to appellant his check covering, inter alia, a refund of $75, advanced by the association, through appellant, to the sheriff for advertising costs in connection with the foreclosure sale of the Davis property.

The third item covered by the petition was one for $164, being the aggregate of certain premiums alleged to have been collected by appellant, as solicitor for the association, upon six mortgage loans made between April, 1930, and June, 1932. The prayer of the petition was for a rule upon appellant to show cause

why he should not pay over to his client the aggregate sum of $959.71.

In the answer filed by appellant, the receipt by him, in his capacity as solicitor for the association, of the three above mentioned sums of money, was not denied.

With respect to the item of $720.71, it was averred that the arrangement between the association and appellant was that he should hold this money until such time as the association secured a purchaser for the Johnson property; that the association subsequently requested that the money be returned to it; and that appellant "paid the said money to the [association] by applying the said amount to the credit of the said [association] on the indebtedness of the [association] to [appellant] for professional services rendered to the said Lemington Building and Loan Association, as shown by the bill of the amount of said services." A copy of the bill was attached as an exhibit to the answer.

As to the item of $75, refunded by the sheriff, it was averred by appellant that he "repaid" this amount to the association by likewise applying it "to the credit of the [association]" upon its alleged indebtedness to him. The same defense was made as to the item of $164—that it was credited upon the association's alleged indebtedness.

In conclusion, appellant contended that as the only matter involved was a dispute between his client and himself over their accounts, he was entitled to go to a jury. It is clear from the answer and an examination of the copy of appellant's account against his client that his sole defense to the charges made against him in the petition is based upon the right of an attorney to deduct, under proper circumstances, just compensation for his services out of moneys in his hands belonging to his client. Under the issues thus framed it because the duty of the court below to make

a careful investigation. The question of the good faith of appellant in applying the moneys in question to his own use necessarily arose and became vitally important.

An examination of the exhibit attached to the answer shows that the controversy relates to the matter of appellant's compensation for foreclosing six mortgages held by the association. The properties, the dates of foreclosure, and the amounts claimed by appellant may be thus stated:

| | |
|---|---|
| Davis, September 12, 1932, 5% on face of judgment .......................... | $ 97.65 |
| Johnson, September 17, 1932, " | 227.58 |
| Sipe, September 12, 1932, " | 280.37 |
| Johnson (No. 2), November 7, 1932, " | 201.71 |
| Hollibaugh, November 7, 1932, " | 272.75 |
| Wallace, February 6, 1933, " | 96.48 |
| Total .......................... | $1,176.54 |

As against the above charges he allowed credit to the association for an item of $175, received by him from it as fees, and then gave it credit for the three items referred to in the petition as aggregating $959.71,—making total credits of $1,134.71, as against charges totalling $1,176.54, and showing an apparent balance due him as of March 1, 1933, of $41.83.

In the taking of the depositions a question of veracity developed between appellant and the officers of the association with respect to the terms of a verbal agreement concerning the fees to be paid him for his professional services in foreclosing these mortgages, and with relation to his contention that the $720.71 was not to be paid to the sheriff but was to remain in his hands until a purchaser should be secured for the Johnson property.

Ora C. Dixon, president of the association, denied that such arrangement had ever been made and testi-

fied as follows with reference to appellant's attempted explanation of the delay in obtaining the sheriff's deed:

"A. When I first spoke to him about it he said they didn't have the deed yet, and later on when I spoke to him he said he had the deed but had left it on the desk in his office. Later on he said he had the deed, he had to return it, it was not properly made out, some mistake in the location of it. Q. Did you ever receive a deed at all for this property? A. No, we never have yet."

The testimony of the president, secretary, treasurer and one of the directors, was to the effect that if the association should be obliged to buy in a property at the sheriff's sale, appellant would be paid a fee of $35 for conducting the proceedings upon that mortgage; but if a property should be bought at the sale by any third party, he would be entitled to receive the usual five per cent attorney's commission on that particular mortgage.

The credit item of $175, above mentioned, is the aggregate of these so-called "minimum fees" upon five of the properties bought in by the association. Appellant contradicted this testimony and claimed the $35 fee in each case was merely an advancement on account of his full commission.

After an attentive reading of the depositions, we concur in and adopt (subject to a slight correction hereinafter stated) these excerpts from the opinion written for the court below, consisting of MACFARLANE, P. J., PATTERSON and DITHRICH, JJ., sitting in banc:

"We have carefully examined the testimony taken and are of the opinion respondent has wholly failed to substantiate the averments of his answer. The predominating weight of the evidence is that respondent as counsel for petitioner had agreed to charge a mini-

mum mortgage foreclosure fee of $35 and that only when the sheriff's sale resulted in a disposition of the foreclosed property to an outside bidder and the amount of petitioner's judgment [was] realized was respondent to receive a five per cent commission. It was agreed that where petitioner was required to bid in the property, only the minimum fee would be charged. This is the effect of the testimony, ...... and the surrounding circumstances are corroborative of that testimony. ......,

"Respondent admits receiving the sum of $720.71 to pay the sheriff and that he never paid it. His reason is unconvincing. He stated in oral argument that he held it at first because he had an arrangement with the sheriff by which it was not to be paid until the property was sold to someone else, a vague understanding of which respondent makes no intelligible explanation. He says he was subsequently notified by the petitioner not to pay it, but this is discredited by petitioner's investigation in the sheriff's office resulting in the discovery that it had not been paid.

"The respondent admits the receipt of $164, mortgage premiums, and the $75, sheriff's refund, as well as the $720.71 to pay the sheriff, but sets all these items up as credits against his claim for five per cent attorney's commissions on all mortgage foreclosures.

"We can reach no conclusion except that respondent was paid the fees agreed to be paid by petitioner and that his claim for five per cent attorney's commissions on all mortgage foreclosures is without substance in law and in fact and he should, therefore, pay to the petitioner the sum of $959.71, and the rule to do so must be made absolute."

The evidence shows that appellant conducted six proceedings and has been paid the fee of $35 for only five of them. We, therefore, think the amount due from appellant to the association should have been stated as $924.71.

But little more need be said. The rule deducible from all the cases is that an attorney has a lien (or rather a right of defalcation) for his services upon moneys of his client, while in his hands, and may deduct therefrom just compensation. If the client is dissatisfied with the amount retained, he may either bring an action against the attorney or take a rule upon him. When the latter remedy is invoked, as in the case at bar, the court will consider whether the sum was held back in good faith and is no more than just compensation. If so, the rule will be discharged and the parties sent to a jury; but if otherwise, the court will compel immediate justice.

Under all the circumstances of this case, and particularly those indicating that the larger portion of the funds retained by appellant was placed in his hands for a specific purpose, we are of opinion that the court below was fully justified in disposing of the matter summarily.

The order of October 10, 1933, is modified, as indicated, and as modified affirmed.