Smyth, Appellant, *v.* Fidelity and Deposit Co. of Maryland.

Argued October 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. Horace Hepburn, Jr.,* for appellant.

*Francis F. Burch,* with him *George O. Philips,* for appellee.

OPINION BY CUNNINGHAM, J., February 26, 1937:

The action below was assumpsit against the principal and surety in a certain injunction bond. Plaintiff, an attorney at law, had been restrained by an injunction from transferring a certain stock certificate, then in his possession but belonging to a client and upon which he claimed a lien for professional services, and brought the present suit to recover damages allegedly sustained by reason of the injunction. The principal in the bond was not served and the action proceeded against the surety.

There is no dispute about the facts. At the trial, plaintiff alone offered evidence, which consisted of certain averments of his amended statement of claim together with the corresponding admissions in the affidavit of defense. In order to bring the question of law arising out of the facts before the court in banc, the trial judge directed a verdict for plaintiff for $1300 against the defendant surety company, of which $1000 represented the value of the stock when the injunction issued, and the remainder interest. Defendant moved for judgment n. o. v., which motion the court in banc, after argument, granted. It is from this judgment that plaintiff now appeals.

Smyth, the appellant, bases his right to recover on the following facts. On and prior to November 29, 1930, he had possession of stock certificate No. 145 for 250

and 4/10th shares of preferred stock of the Tourists Hotel & Garage Company registered in the name of a client, Edward E. Bratton. Appellant had recovered the certificate for his client as the result of certain litigation, and claimed a lien thereon as security for the payment of a fee of $1500, allegedly owing by Bratton to him for the legal services rendered in that litigation.

On November 29, 1930, Stephen F. Herron, as use plaintiff in a judgment recovered by E. R. French and Company against Bratton filed a bill in equity against Bratton, Smyth and the Tourists Hotel & Garage Company, praying for a preliminary injunction restraining Smyth and the company from transferring or disposing of the 250 and 4/10th shares of stock then in Smyth's possession. On the same day, a preliminary injunction was granted as prayed for and an injunction bond filed in the sum of $2000, on which Herron—plaintiff in the bill—was principal and Fidelity and Deposit Company of Maryland, appellee herein, became surety. The injunction bond, which is the foundation of the present action, was conditioned to indemnify appellant and the other defendants in the bill "for all damages which may be sustained by reason of said injunction." A further injunction bond was filed on December 11, 1930, when the injunction was continued, identical in all respects with the first.

The value of the stock in appellant's possession on November 29, 1930, the date of the injunction, was admittedly $1000. Later, December 12, 1931, appellant having brought suit against Bratton for the fee allegedly owing him for his legal services in recovering the stock certificate, obtained a judgment against him in the amount of $1500. On March 21, 1932, the injunction was dissolved. During the period of the injunction the value of the shares of stock represented by the certificate in appellant's possession declined steadily until

at the time the injunction was dissolved they were worthless.

In order to recover, it was clearly incumbent upon appellant to show in what respect he suffered damage by reason of the injunction against him.

In *Miller et al. v. South Hills Trust Co. et al.,* 96 Pa. Superior Ct. 273, the facts and procedure were strikingly similar to the present case. There Miller, an attorney, who had been enjoined from transferring stock in his possession, brought suit on the injunction bond for alleged damages. The defendants in the injunction proceeding, in addition to Miller, were an execution defendant, Baker, and officers of the corporation issuing the stock. The chancellor in the equity proceeding had found that the stock had been assigned to Miller for value, that Baker had no interest therein, and accordingly had dismissed the bill. The lower court nonsuited Miller in his suit on the bond because he failed to prove that he would have sold the stock had it not been for the injunction, i. e. failed to prove any damage. This court, after pointing out that the Act of May 6, 1844, P. L. 564, Section 1, 12 PS §2071, requiring the giving of a bond before an injunction can issue, governs the question of the extent of the damages recoverable thereunder, said, (p. 280) : "In *Sensenig v. Parry,* 113 Pa. 115, in an action on an injunction bond, an instruction to the jury was affirmed to the effect that 'you must allow no damages except such as result directly from the injunction and its immediate consequences, for the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of the vested legal rights by the injunction.' "

Again, in *Keown v. Mallissee,* 57 Pa. Superior Ct. 592, where a tenant wrongfully held over, it was held that the landlord could recover damages in trespass for use and occupancy, and was not limited to a suit on an injunction bond given by the tenant who had secured a

preliminary injunction against the landlord. Speaking of the injunction bond the court stated (p. 598) : "The purpose of an injunction bond may be stated in the language of the Act of May 6, 1844, P. L. 564, section 1, to be 'conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction' and only such damages can be recovered that 'flow directly from the injunction as its immediate consequences,' such that arise from the invasion of the vested legal rights of the party enjoined: *Sensenig v. Parry,* 113 Pa. 115.'' See also *Azar v. Markle et al.,* 311 Pa. 296, 166 A. 889; Sutherland on Damages (4th ed.,) Volume 2, Section 526, page 1733. Plaintiff is entitled to compensation for those losses which are the natural and proximate result of the restraining order, 14 R. C. L. Section 184, page 482.

Did appellant suffer any damage as the direct and proximate result of the injunction restraining him from transferring the stock? As we gather from his brief, he bases his right to recover here on several theories.

In the first place, he claims he had an attorney's lien on the certificate in his possession, as security for legal services rendered his client, Bratton, the owner of the certificate, and that the injunction destroyed the value of this lien. Assuming, without deciding, that appellant had a right to retain the stock certificate as against Bratton until the latter paid him his fee of $1500 for recovering it, what was the nature and extent of this right or so-called attorney's lien?

Attorneys' liens existing at common law are divided into two distinct classes—the general or "retaining" lien, i. e., the right of the attorney to refuse to surrender documents, papers, etc., belonging to his client, and the "charging lien," or the right to be paid out of a fund or judgment which he has been instrumental in recovering for his client. We are here concerned only with the former. If appellant had an attorney's lien in

the present case, it was a retaining lien which simply gave him a right to hold the stock until he was paid his fee by the client, and it did not include the power to sell.

"The retaining lien may be defined as the right of an attorney at law to retain possession of such documents, money, or other property of his client coming into his hands by virtue of the professional relationship, until he has been paid for his services, or until he voluntarily surrenders possession of the property, with or without payment." 2 Thornton on Attorneys at Law, Section 573, page 970. Thornton also states, Volume 2, Section 575, page 972: "The retaining lien is a mere right to retain the papers or other property on which it exists; and while it attaches to every species of property belonging to the client, and which has come to the attorney's possession in the course of his employment, it cannot be actively asserted or enforced."

The rule is stated in Jones on Liens, Volume 1, Section 113, page 106, as follows: "An attorney's general lien is a common law lien founded upon possession, and is a right on the part of an attorney to retain papers or other property that may have come into his possession. ...... Like all other common law liens springing from possession, it is a passive lien, a mere right of retainer, without any power of enforcement by sale." In 6 Corpus Juris 803, Section 426, it is pointed out that the retaining lien confers no power of sale: "It is a mere right of the attorney to retain the papers, etc., of his client in his possession until his claim is satisfied; it confers no further rights, and is valuable to the attorney in proportion to the extent that such retention by him will embarrass the client, that is to say, he cannot sell said papers under process to foreclose his lien, as may a pledgee or a mortgagee in other cases, but his lien extends only to the right to retain such papers until his debt is paid ......"

No Pennsylvania cases have been brought to our attention dealing directly with the technical "retaining" lien. However, our cases, relating mostly to some phase of a charging lien or right of defalcation, as it is designated, show, by their broad language that an attorney has a common law retaining lien in this state.

In *Zinsser v. Zinsser*, 83 Pa. Superior Ct. 461, the appellant, an attorney, having obtained a judgment for his client, had half of it marked to his own use without the client's authorization. The client, meantime, settled with the execution defendant and gave the latter a release. At the instance of the defendant the court below struck off the paper marking half the judgment to appellant's use, which action was affirmed by this court, Judge KELLER, stating, (p. 463) : "On the other hand it has been repeatedly held by our appellate courts that the lien which an attorney has for his services attaches only to a fund, or papers, actually in his possession: *McKelvy's App.*, 108 Pa. 615; *Seybert v. Salem Twp.*, 22 Pa. Superior Ct. 459; and this so-called lien upon a fund in his possession is rather in the nature of a right to defalcate: *Dubois's Appeal*, 38 Pa. 231; *Balsbaugh v. Frazer*, 19 Pa. 95."

In *Dubois's Appeal*, 38 Pa. 231, our Supreme Court said: "In a certain sense, an attorney has been said to have a lien for his fees, upon the money or papers of his client, while they are in his hands. He may deduct from money collected by him, a just compensation for collecting it, and need only pay over the balance. This, however, is a right to defalcate rather than lien. So he may retain papers intrusted to him, until he has been paid for services rendered in regard to them."

In general, the right of an attorney to a charging lien, or the right to deduct his fees out of money which he has in his hands belonging to his client, and pay over the balance, is well recognized and enforced in Pennsylvania: *Lancaster Trust Company's Case*, 323 Pa.

107, 186 A. 367; *Balsbaugh v. Frazer,* 19 Pa. 95; *Lemington B. & L. Assn. v. Weddell,* 115 Pa. Superior Ct. 114, 174 A. 673; and *Martin v. Throckmorton,* 15 Pa. Superior Ct. 632.

Granting that appellant had a common law attorney's retaining lien, it was simply a right to hold on to the certificate, and gave him no power of sale. This is in accordance with the rule that a bailee's common law lien on personal property conferred no power of sale: *Rodgers v. Grothe,* 58 Pa. 414. See also *Bernstein v. Hineman,* 86 Pa. Superior Ct. 198, and *Boys' Novelty Suit Company v. Garfield,* 76 Pa. Superior Ct. 365, where it was held that a sale by a bailee claiming a lien, without compliance with the statute, was a conversion. Additional authorities for the proposition that a common law lien gave no power of sale are: *Aldine Mfg. Co. v. Phillips,* 118 Mich. 162, 76 N. W. 371, 42 L. R. A. 531; *Burrough v. Ely,* 54 W. Va. 118, 46 S. E. 371; 17 R. C. L. 25, page 613; 37 Corpus Juris 340, Section 63; Scott, Law of Bailments, page 111; 1 Jones on Liens, Section 1033.

The Act of December 14, 1863, P. L. (1864) 1127, 6 PS §15, providing that "commission merchants, factors and all common carriers, or other persons," having a lien upon goods, wares, merchandise, etc., for expenses of carriage, storage, or for labor bestowed thereon, may sell the goods under certain conditions at public sale to satisfy the lien, pleaded in appellant's statement, cannot possibly apply to an attorney's retaining lien. This act, being in derogation of the common law, must be strictly construed: *Devers v. Scranton City,* 308 Pa. 13, 161 A. 540, and cases cited p. 17 and 19.

We are, therefore, unable to see that appellant sustained any damage by reason of the injunction, the only effect of which was to prevent him from disposing of the certificate. The injunction in no way interfered with his right of possession under his alleged attorney's

retaining lien. In fact, it might be said that the injunction simply further reinforced the lien by directing that appellant should continue in possession of the certificate. If appellant's right of possession had given him a right to sell or dispose of the stock certificate, an entirely different question would be presented and, under the ruling of this court in *Miller et al. v. South Hill's Trust Co.,* supra., the restraining order might, under such circumstances, have been a direct cause of loss, or damage to him. But that is not the case now at bar.

Although deprivation of his alleged right to sell the stock is the ground of recovery set up in his statement, it is also argued by appellant that he is not suing for loss of his lien, but primarily for the destruction or loss of the value of the property bailed; that since he was a bailee of the certificate, he is entitled, as against appellee, to recover the entire value of the stock by reason of the destruction of the subject matter of the bailment. There can be no doubt about the rule that a bailee in possession of personal property, is entitled, as against a third party, to recover the full value of the bailed property in case of its destruction or conversion by the third party, the bailee being liable over to the bailor for any damage recovered in excess of his interest: *McCrossan v. Reilly,* 33 Pa. Superior Ct. 628; *Gunzberger v. Rosenthal,* 226 Pa. 300, 75 A. 418; *Penna. R. R. Co. v. Farrell,* 64 Pa. Superior Ct. 296. The trouble with this contention is that it *assumes* the injunction caused the stock to depreciate in value until it became worthless. There is nothing in the record to show that such was the case, nor does it show what caused the stock to become worthless. Certainly the mere fact that appellant continued to hold the certificate, under order of the court, could not cause it to depreciate in value. So far as disclosed by the record, the depreciation was due entirely to other, and mainly economic,

causes. No effort was made to show that the stock had any value when appellant obtained his judgment against his client on December 12, 1931, or at any time between that date and the dissolution of the injunction.

Our conclusion is that judgment was properly entered in favor of the defendant surety, notwithstanding the verdict, because appellant failed to show he sustained any damage as the direct and proximate result of the issuing of the injunction.

Judgment affirmed.