## Rudick v. Dorfman

*Charles F. Gerhard*, petitioner, p. p.

SMITH, P. J., February 18, 1941.—Charles F. Gerhard, attorney for the above defendant, filed his petition for withdrawal of appearance on October 17, 1940, averring that he entered his appearance for defendant in November 1937 and subsequently had the sheriff's sale of defendant's premises stayed, and, after many conferences and discussions with the attorney for plaintiff, an agree-

ment was entered into between plaintiff and defendant and their respective counsel whereby petitioner was to pay plaintiff's counsel $100 on January 26, 1939, and $100 per month out of rents which he was then collecting on defendant's properties, said payments to be applied on account of delinquent taxes and interest in arrears on the mortgages and payments on account of the principal due. Petitioner avers that prior and subsequent to January 29, 1939, defendant himself made rent collections and thus rendered it impossible for petitioner to comply with the agreement to pay $100 per month; that the total rent collected by petitioner was $923, an account of which was submitted to defendant, and $550 of this was paid to the attorney for plaintiff; that petitioner paid certain pawnbrokers $100 on account of jewelry pledged by defendant and defendant promised to reimburse him for this amount so it could be paid on account of the agreement but failed to do so; that petitioner made other disbursements aggregating $33.50, or a total disbursement out of the funds in his hands of $683.50; that defendant neglected to pay over to petitioner the rent collections so that the agreement came into default and leave was given plaintiff to proceed; that subsequently defendant caused a letter to be written on February 25, 1940, which rendered impossible further representation of defendant by petitioner; that petitioner's representation of defendant covered two years and consisted of appearances in court, conferences, letters written, and other legal services. Petitioner, therefore, prayed that he be permitted to withdraw his appearance for defendant and that the court award him $350 for his services and expenses.

Defendant filed an answer averring that the agreement between petitioner and defendant in November 1937 was that petitioner was to receive $100 as full compensation for services to be rendered by petitioner, to be paid at the conclusion of the services and was to be his entire charge for such services; that never before January 29, 1940, did petitioner make demand upon defend-

ant for any fee in excess of $100; and that petitioner's representation had terminated prior to October 1939, at which time there were funds in the hands of petitioner which were to have been paid to plaintiff's counsel in accordance with the agreement. Defendant further avers that petitioner collected the rents beginning in December 1937 and failed to make distribution in accordance with the agreement, and that at the expiration of petitioner's representation of defendant petitioner had moneys in his possession which were to have been paid to plaintiff's counsel in accordance with the agreement; that defendant made repeated demands for the return of this money and petitioner on one occasion promised to do so but did not, whereupon defendant filed a complaint with the Board of Censors of the Philadelphia Bar Association. Defendant avers that plaintiff has never given him a full account of the moneys collected and expended by him, and that petitioner does not set forth in his petition what funds are still in his possession. Defendant contends that the court has no authority to fix petitioner's fee since petitioner was not appointed by the court and that the fund is not subject to the court's jurisdiction and prays that petitioner's petition for allowance of counsel fee be dismissed.

At the outset, we are confronted by the proposition of the correct procedure to be followed for a court to fix an attorney's fee, or pass upon the question of the approval of the fee, or size of the fee, retained by the attorney for his services. If the fund is in court for distribution: Commonwealth ex rel. v. Order of Solon, etc., 193 Pa. 240; or in the hands of a third party: Quakertown & Eastern R. R. Co. v. Guarantors' Liability Indemnity Co. of Phila., 206 Pa. 350; Seybert v. Salem Twp., 22 Pa. Superior Ct. 459; the attorney has no right of "lien" on his client's money. In those cases where it might be considered that the court has decided contrary to this general rule, as in McKelvy's & Sterrett's Appeals, 108 Pa. 615, where the fund was in court, and Harris' and Jacoby's Appeals, 323

Pa. 124, where the fund was in the hands of the board of view, it was specifically established as a fact that the attorney was to look to this fund for his compensation and that this was sufficient to take it out of the general rule. On the other hand, an attorney has a right of lien on money in his hands which he has collected for his client: Balsbaugh v. Frazer, 19 Pa. 95; Lancaster Trust Company's Case, 323 Pa. 107; but such right of lien gives him no power to sell stock the certificate of which he holds for his client: Smyth v. Fidelity & Deposit Co. of Maryland, 125 Pa. Superior Ct. 597; nor to mark a judgment to his own use: Zinsser, for use, v. Zinsser, 83 Pa. Superior Ct. 461; nor to hold the sum collected for fees for prior representations: National Slovak Society v. Gunther, 36 D. & C. 97; nor for representing his client in other capacities: Martin v. Throckmorton, 15 Pa. Superior Ct. 632. In Dubois' Appeal, 38 Pa. 231, it was admitted that the money to be distributed was a surplus arising on a mortgage sale, not brought into court through the attorney's agency; and in Patrick, etc., v. Smith, 2 Pa. Superior Ct. 113, there was no fund at all, until paid into court, not as a result of the efforts of counsel but by consent of all parties.

The performance of services by an attorney, at the instance of his client, implies an assumption to pay for them quantum meruit and, if the client is dissatisfied with the sum which the attorney retains out of the funds which he has collected, the client may either bring suit against the attorney to recover a portion of the sum retained as fee: Balsbaugh v. Frazer, supra; or take a rule upon him: Lemington B. & L. Assn. v. Weddell, 115 Pa. Superior Ct. 114; National Slovak Society v. Gunther, supra. In the case at bar, defendant does not sue petitioner for a portion of any fee retained by petitioner, nor does he take a rule upon him. It is petitioner who asks the court to determine that a fee of $350 for his services to defendant is reasonable, and he makes this request in his petition to withdraw his appearance. While in McKelvy's Appeal, supra,

the court held that the lower court was a court of equity administering a *fund within its actual grasp* and was entirely competent to dispose of every question connected with that fund, there the auditor who awarded the attorney his fee was appointed by the court and the fund was in the hands of the court. Here, the court had nothing to do with the appointment of petitioner as attorney for defendant, nor is the fund within the grasp of the court, and we do not see how the court can claim jurisdiction under the circumstances. Here, also, defendant avers in his answer that a fee of $100 was agreed upon between petitioner and defendant and was to be petitioner's sole compensation. This is a question of fact which we cannot decide in this proceeding.

Again, the question arises as to the right of petitioner to hold any fee in excess of the amount which defendant admits he agreed to pay petitioner out of the moneys in his possession. The cases indicate that the services of the attorney must have operated to secure or collect the fund out of which he claims to be paid. In this case it would appear from petitioner's petition that he was merely an agent either to receive the rents collected by defendant, or collect them himself, and pay therefrom $100 per month to plaintiff on account of defendant's indebtedness. Under the circumstances we do not believe that petitioner could be considered to have been the sole instrumentality for the collection of the fund, or that his services caused the fund to come into being, which would be necessary to give him a right of lien. This could be developed in a proper proceeding.

What kind of a lien would petitioner have? A retaining lien has been defined as " '. . . the right of an attorney at law to retain possession of such documents, money, or other property of his client coming into his hands by virtue of the professional relationship, until he has been paid for his services, or until he voluntarily surrenders possession of the property, with or without payment. . . . The retaining lien is a mere right to retain the papers or

other property on which it exists; and while it attaches to every species of property belonging to the client, and which has come to the attorney's possession in the course of his employment, it cannot be actively asserted or enforced' ": Smyth v. Fidelity & Deposit Co. of Maryland, supra, p. 602; while a charging lien has been defined, quoting from 2 Thornton on Attorneys at Law, sec. 578, (p. 975):

"The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex aequo et bono*, that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained. . . . Nor is the charging lien a merely passive one, but, on the contrary, it entitles the attorney to take active steps to secure its satisfaction." And in section 580 (p. 978):

"The doctrine under which the charging lien became effective was established on general principles of justice, and it rests upon the theory that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney. It has been well described as 'a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases.' The parties being in court, and a suit commenced and pending, the courts invented this practice, and assumed this extraordinary power, for the purpose of protecting attorneys in their compensation." See the excellent opinion of Mr. Justice Maxey in Harris' and Jacoby's Appeals, 323 Pa. 124.

It may be that petitioner has been badly treated by his client and that he has just ground of complaint against the latter on that score, but we cannot on that account extend to petitioner a remedy which the law does not afford.

We accordingly grant petitioner's request to withdraw his appearance as attorney for defendant, but we must refuse to pass upon the question of his fee in this proceeding.