## Recht v. The Urban Redevelopment Authority

*Herman H. Recht*, p. p.
*McCrady & Nicklas*, for petitioner.

WEISS, J., March 20, 1959.—This matter concerns a petition filed by John B. Nicklas, Jr., of McGrady & Nicklas, a member of this bar, praying for a charging lien against a verdict in the sum of $6,360 awarded by jury to plaintiff on account of the taking by defendant authority of an undivided one-sixth interest of plaintiff in certain real estate in the 2nd Ward of the City of Clairton, Allegheny County, and asking that judgment be awarded to petitioner in the sum of $750 for professional services rendered out of the funds.

From the pleadings and the testimony taken at the trial before the court without a jury on January 12, 1959, the court makes the following

## Findings of Fact

1. Petitioner has been a practicing attorney of the Allegheny County Bar since 1922 and presently and at the time of the matters concerned herein has law offices in the McCrady-Nicklas Building, 304 Ross Street, Pittsburgh.

2. At no. 931, July term, 1952, in the Court of Common Pleas of Allegheny County, plaintiff, Herman H. Recht, intervened as a party plaintiff in a certain equity proceeding filed by one Matthew P. Oliver against the City of Clairton, the councilmen and The Urban Redevelopment Authority of the City of Clairton. In that proceeding plaintiffs sought to enjoin defendants from taking plaintiffs' land by the exercise of the power of eminent domain. The complaint was dismissed by this court (Kennedy, J.), from which decision an appeal was taken by this plaintiff to the Supreme Court of Pennsylvania at no. 134, March term, 1953. Plaintiff retained John B. Nicklas, Jr., Esq., this petitioner, to prepare the necessary briefs and argue the Supreme Court appeal. On June 26, 1953, the action of the lower court in dismissing the complaint was affirmed by the Supreme Court (Horace Stern, C. J.). Petitioner was paid his legal fees by plaintiff for this Supreme Court appeal and makes no claim therefor in this proceeding.

3. Following the adjudication by the Supreme Court, The Urban Redevelopment Authority of the City of Clairton petitioned for viewers to assess damages at no. 312, April term, 1954, in this court. Plaintiff herein, Herman H. Recht, retained Mr. Nicklas as his counsel to represent him in the viewers' proceedings. In fact, plaintiff admits that Mr. Nicklas appeared with him in this court and raised objections to the amount of the bond of The Urban Redevelopment Authority prior to the authority taking possession of plaintiff's property pursuant to the condemnation.

4. At the request of Edward Recht, plaintiff's brother, Mr. Nicklas was retained to represent Edward Recht in the viewers proceedings also. Mr. Nicklas made all the necessary preparations for the trial of the case before the viewers, hired real estate experts Leonard P. Kane and Edward M. Skapik, interviewed plaintiff and his brother Edward at Mr. Nicklas' office, attended the view of the property with the board of viewers, at which plaintiff and his brother Edward were present, as well as other counsel representing other parties in interest.

5. On March 22, 1954, Mr. Nicklas conducted the trial of the case before the board of viewers on behalf of plaintiff and his brother Edward, examined the witnesses and cross-examined defendant authority's witnesses. On June 30, 1954, the board of viewers awarded damages of $16,500 for property designated at V-15 and V-16, and $6,000 for property designated as V-14, or a total of $22,500. Both plaintiff and his brother, Edward Recht, were present throughout the trial proceedings before the board of viewers conducted by Mr. Nicklas. Plaintiff never told Mr. Nicklas or the board of viewers that he did not desire Mr. Nicklas to represent him at this trial.

6. Petitioner filed exceptions on behalf of plaintiff and his brother to the viewers award, as well as on behalf of the other property owners, with the consent of their counsel, attorneys C. Joseph Recht and Norman Gluck, argued the same, and when said exceptions were dismissed by the board of viewers Mr. Nicklas prepared and filed on behalf of plaintiff, his brother and the other property owners, an appeal to this court at no. 1057, January term, 1955, on October 29, 1954. Subsequently, all of the parties in interest, except plaintiff, agreed to accept the award of the board of viewers rather than proceed with the appeal and trial by jury in this court, and said appeal was accordingly withdrawn by Mr. Nicklas.

7. Just prior to the expiration date for filing an appeal from the viewers award to the court of common pleas, plaintiff appeared at Mr. Nicklas' office with Louis Rosenfield, Esq., a member of this bar, and for the first time advised Mr. Nicklas that Mr. Nicklas had never been hired by him to represent him in the viewers proceedings. He informed Mr. Nicklas that he wanted to file an appeal to this court from the viewers award. Mr. Rosenfield refused to file the appeal unless Mr. Nicklas was paid for his services in the sum of $750, but with the approval of Mr. Nicklas did prepare the appeal and Mr. Recht filed it at no. 816, January term, 1955.

8. The appeal of plaintiff at no. 816, January term, 1955, in this court was tried by Joseph I. Lewis, a member of this bar, and resulted in a verdict for plaintiff in the sum of $6,360. Mr. Nicklas did not participate in the trial of the jury case.

9. Plaintiff, Herman H. Recht, does not deny that the charge of $750 for legal services rendered to him by Mr. Nicklas in the preparation and trial of his case before the board of viewers is fair and reasonable, and this court so finds.

### Discussion

Plaintiff, Herman H. Recht, resists the payment of Mr. Nicklas' fee for services rendered on his behalf in the preparation and trial of the viewers proceedings on the ground that he never hired Mr. Nicklas. The court finds from the pleadings and competent evidence that plaintiff did hire Mr. Nicklas. Plaintiff admits in his answer the averments of paragraph 4 of the petition for counsel fees, namely, that Mr. Nicklas, at the request of Herman H. Recht, appeared in court with him and raised objections to the amount of the bond, and also through his efforts saw that the proper type of bond was filed in court before permitting The Urban Redevelopment Authority to take possession of the property of the said Herman H. Recht. Plain-

tiff contends, however, that Mr. Nicklas did this as a favor to him and told him that he had been fully paid in the Supreme Court action and that he would make no charge for seeing that a proper bond was filed by The Urban Redevelopment Authority. Opposed to this rather unusual explanation on the part of plaintiff, Herman H. Recht, Mr. Nicklas denied that he ever told plaintiff that he would make no charge, and thereafter Mr. Nicklas proceeded with the preparation of plaintiff's case for the board of viewers hearing, hired real estate experts, attended the view of the property in Clairton, which view was also attended by plaintiff, Herman H. Recht, and conducted the trial of the case before the board of viewers in the presence of plaintiff, who sat throughout the trial and never informed Mr. Nicklas or the Board that he was not represented by counsel.

In the seventh paragraph of the petition for legal fees, Mr. Nicklas claims that when Mr. Louis Rosenfield appeared at his office with plaintiff, Herman H. Recht, preparatory to filing an appeal to the viewers award to this court, that Mr. Rosenfield was informed by Mr. Nicklas that Mr. Recht owed him $750 for his services before the board of viewers. Plaintiff, in his answer to Mr. Nicklas' petition, contends that Mr. Nicklas stated to him and to his counsel, Mr. Rosenfield, that it was perfectly all right for attorney Rosenfield to represent Herman H. Recht and that the said Herman H. Recht did not owe said John B. Nicklas, Jr., anything. This statement is flatly denied by Mr. Rosenfield, who was called as a witness at the hearing before this court by Mr. Nicklas. On the contrary, Mr. Rosenfield testified that when Mr. Nicklas told him in Mr. Recht's presence that he had not been paid and that there was $750 owing, that he refused to file the petition of appeal. The record supports the testimony of Mr. Nicklas and Mr. Rosen-

field since the appeal was filed by Mr. Recht himself without counsel.

The contention of plaintiff that he did not hire Mr. Nicklas is therefore untenable, and we have found as a fact that he did hire Mr. Nicklas as his counsel to represent him before the board of viewers. It is also our opinion and it is not denied by plaintiff that Mr. Nicklas' charges of $750 for his services are fair and reasonable.

A motion to dismiss Mr. Nicklas' petition for charging lien was filed by plaintiff's counsel, Joseph I. Lewis, Esq., and argued before the court en banc, consisting of Judges Ellenbogen, Nixon and Cercone. Oral argument and brief contending that no charging lien should be allowed against the jury's verdict of $6,360 was made and filed by William J. LeWinter, a member of this bar. On February 25, 1958, the court en banc dismissed the motion to dismiss the rule to show cause why petitioner's counsel fees should not be paid and allowed plaintiff Herman H. Recht, 20 days to file an answer to the rule to show cause. Since this objection has again been raised at the hearing before the trial judge, it becomes necessary to pass upon the question of whether or not Mr. Nicklas has a charging lien on the jury's verdict of $6,360 for services rendered plaintiff in the viewers proceeding, even though Mr. Nicklas did not participate in the trial of the case before the jury in this court.

Attorneys' liens can be divided into two distinct classes: (1) The general or retaining lien and (2) the charging lien: Smyth v. Fidelity and Deposit Co. of Maryland, 125 Pa. Superior Ct. 597, 326 Pa. 391.

"As to the charging lien, it has always been recognized that it extends only to services rendered in the proceedings creating the fund and not to services rendered in other cases: Martin v. Throckmorton, 15 Pa. Superior Ct. 632; Aber's Petition, 18 Pa. Superior

Ct. 110. The general or retaining lien, however, extends not only to costs and fees in the particular cause in which the property came into the attorney's possession, but as well to costs and fees due the attorney from other professional business: Norrell v. Chasan, 125 N. J. Eq. 230, 4 A. 2d 88 (1939) ; Restatement, Agency, Sec. 464, comment h. For complete citation of cases, see 5 Am. Jur. 390; 7 C.J.S. 1155; 120 A.L.R. 1238": Greek Catholic Union of Russian Brotherhoods of United States of America v. Russin, 340 Pa. 295, 296.

In the present case the services rendered by Mr. Nicklas were essential and necessary in order for the property owner, Herman H. Recht, to follow the procedure set forth in the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, et seq. The necessary procedure to protect the property owner's rights and obtain damages for the taking by the authority required a proceeding and hearing before the board of viewers, exceptions to the viewers award by either party, and thereafter within 30 days after confirmation from viewers award, an appeal by either party to the common pleas court. In other words, Herman H. Recht, who now claims that he did not desire a hearing before the board of viewers, had no legal right to do so since he was bound by the procedure as set forth in said act.

Consequently, the services rendered by Mr. Nicklas were essential and necessary in order for Mr. Recht to ultimately obtain the award of verdict by a jury.

Counsel for plaintiff cites The Third Class City Code of June 23, 1931, P. L. 932, art. XXVIII, sec. 2842, 53 PS §742, which permits an appeal within 30 days after report of viewers by either party to the court of common pleas, and demands a trial by jury, and concludes that since such a jury trial is a hearing de novo, that an attorney's charging lien for services

rendered before the board of viewers prior to the trial would not constitute a charging lien.

This argument is fallacious. As pointed out above, no provision is made in the Municipaltiy Authorities Act, nor in The Third Class City Code, for the waiver of viewers proceedings; except under The Third Class City Code a waiver may be had by consent of both parties to the action. No such consent was ever given by The Urban Redevelopment Authority in this case, nor was any such request made by Herman H. Recht to The Urban Redevelopment Authority or to counsel.

It therefore follows that the services rendered by Mr. Nicklas in the necessary procedures and viewers hearing, prior to the jury trial, were all a necessary part of creating the ultimate verdict at the hands of a jury, and hence the charging lien properly should be allowed by the court.

In Harris' Appeal, Jacoby's Appeal, 323 Pa. 124, the real character of a charging lien upon a fund in court or otherwise is fully explained as being an *equitable function and duty of the court in protecting attorneys who are officers of the court and, who, by their skill and services, no matter at what stage in the proceedings, create the fund available.*

The opinion, in part, reads as follows, on page 129:

"On the other hand, the right of an attorney to a charging lien upon a fund in court or otherwise applicable for distribution on equitable principles, which his services primarily aided in producing and to which, by agreement with his client, he is to look for compensation, has long been recognized by the authorities. In Patten v. Wilson, 34 Pa. 299, where counsel for a judgment creditor was held entitled to the whole amount of the judgment as against his client's attaching creditor, this court referred to the right as an 'equitable assignment.' In McKelvey's & Sterrett's Appeals, 108 Pa. 615, the attorney was termed the

'equitable owner,' to the extent of the value of his services, of the fund in court produced by his efforts. In that case this court said at page 620: 'The fact is found by the auditor and the court that the appellee was to look to this fund for his compensation. Its existence is due in great measure to his professional services. To the extent of the value of those services, then, the fund belonged to him; that is to say, he was the equitable owner thereof to the amount of his fee. When, therefore, it was discovered that the appellant was endeavoring to take the fund out of court by the aid of other counsel, thus ignoring the appellee's claim, the court below did right in laying its hand upon such a proceeding. It was acting as a court of equity; it was administering a fund within its actual grasp, and it was entirely competent to dispose of every question connected with that fund. It had been in the hands of a receiver, but the receiver had paid it into court. The allowance of counsel fees touching a fund in equity has always been under the control of a chancellor.' "

At page 130:

"Other authorities sustain the rule established by our cases. A note in 11 A.L.R. 713, refers to some of them. In 1 Jones on Liens (3d ed.) 132, section 147, it is said: 'An attorney may have a special lien upon a fund in court or in the hands of a receiver, recovered by him, and a court of equity, having such a fund in its possession, will protect the attorney in retaining out of it a reasonable compensation for his services.' And further, at page 206, section 201a: 'An attorney has a lien upon a fund recovered by his aid paramount to the claims of persons interested in the fund of their creditors. The lien in such case exists without the aid of the statute': 2 Thornton on Attorneys at Law states the principle as follows (page 1022, section 624): 'It is well settled that an attorney is en-

titled to compensation out of a fund which has been brought into a court of equity by his aid, and to which he looks for payment. Strictly speaking, perhaps, the fund is not actually charged with a lien; indeed, it is rather in the nature of an equitable allowance; but it has the effect of a lien, and is frequently spoken of as such.' (Page 975, section 578) : 'The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, ex aequo et bono, that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained . . . Nor is the charging lien a merely passive one, but, on the contrary, it entitles the attorney to take active steps to secure its satisfaction.' (Page 978, section 580) : 'The doctrine under which the charging lien became effective was established on general principles of justice, and it rests upon the theory that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney. It has been well described as "a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases." The parties being in court, and a suit commenced and pending, the courts invented this practice, and assumed this extraordinary power, for the purpose of protecting attorneys in their compensation.' "

The final contention of plaintiff is that he is entitled to have the question of whether or not he hired

Mr. Nicklas adjudicated by jury trial. We do not believe there is any merit in this contention. This matter was raised by plaintiff previous to the hearing before the trial judge by the petition of Herman H. Recht for leave to amend his answer by requesting a jury trial. A rule to show cause on this petition was granted on April 16, 1958, to which an answer was filed by Mr. Nicklas denying that plaintiff had any legal right to a jury trial in this proceeding. This matter was argued before the court en banc, consisting of Judges Montgomery, Nixon and Duff. After oral argument and briefs, the court en banc on October 16, 1958 (Nixon, J., speaking for the court en banc) dismissed the petition. Since plaintiff has again raised the question at the hearing before the trial judge, it is proper that this question likewise be disposed of in this opinion.

The procedure covering motions and rules is set forth in 2 Standard Pa. Practice, §42, p. 491, and reads, in part, as follows:

"The general practice is, that on all motions or rules to show cause, on the hearing of which facts are to be investigated, the testimony of the witnesses is to be taken by depositions in writing, before a judge, justice of the peace, alderman, or an examiner appointed by the court, upon reasonable notice in writing to the opposite party or his attorney; no witnesses will be examined at the bar, except by a special and previous order of the court."

Section 44 of the same work, page 493, states:

"Trial by Court and Jury Trial.—Questions of fact involved on the hearing of a motion may be decided by the court, or the court may direct an issue at its own discretion in cases where there is conflicting testimony. There is, however, no constitutional right to a jury trial."

The Supreme Court of Pennsylvania has approved this statement in Banning v. Taylor, 24 Pa. 289.

The question before this court involves a contract of employment with a lawyer and a resulting charging lien. These are matters to be heard by the court itself sitting as a chancellor in equity. As stated in 2 Standard Pa. Practice, §11, p. 471:

"Motion and Rule as an Equitable Remedy.—Motions and rules have played an important part in Pennsylvania jurisprudence because of the absence for so long a time of chancery courts or courts endowed with general equity powers. During that time equity was administered, in large measure, by the law courts through legal forms, including motions and rules. Notwithstanding the subsequent grant of equity powers of law courts, these motions and rules are still available for use. Where a rule is addressed to the equity powers of the court, the judge who hears it sits as a chancellor and disposes of it in accordance with the principles of equity. In some cases the equitable remedy by motion and rule is the only proper method of obtaining the desired relief."

We are convinced that motions and rules involving matters of this kind are directed to the equitable powers of this court and that therefore a jury is not required, nor is a jury necessary for a determination of the fact issues involved: Harris' Appeal, Jacoby's Appeal, supra.

It is also apparent from the record that plaintiff in his application for an amendment to his answer did not act timely. The answer was filed by the counsel for plaintiff, Herman H. Recht, on March 14, 1958, thereby putting the case at issue. The hearing was fixed for April 7. 1958, and continued to April 29, 1958. It was not until April 16, 1958, that the petition for leave to amend was filed, on which the rule

to show cause was granted and the proceedings stayed. The petition to amend was not timely.

The claims of Mr. Nicklas for legal services rendered plaintiff will be allowed in the sum of $750 with interest as a charging lien against the fund represented by the jury verdict of $6,360 in favor of the plaintiff. . . .

### Final Judgment Verbatim

And now, to wit, March 20, 1959, it is hereby ordered and decreed that judgment is entered in favor of John B. Nicklas, Jr., against Herman H. Recht in the sum of $750 with interest from November 29, 1954, and costs, and said judgment is hereby directed as a charging lien against the jury verdict of $6,360 in favor of Herman H. Recht against The Urban Redevelopment Authority of the City of Clairton and the indemnification bond filed in this proceeding by Indemnity Insurance Company of North America, as surety.